DRAPER, Appellant, v. SHOOT *et al.*, Respondents.

1. A failure to pay a nominal consideration can not be shown to defeat a deed.
2. What will constitute an adverse possession of land under the statute of limitations must be determined by the circumstances of each case.
3. To support and establish such an adverse possession, a less weight of evidence is required where the entry is with, than where it is without, color of title.
4. The acts of ownership exercised must be visible and notorious, and of such a nature as indicate a notorious claim of property in the land.
5. In determining the question of adverse possession, the payment of taxes by the person asserting title by adverse possession is a fact that may, with other circumstances, be considered by the jury.

*Appeal from Marion Circuit Court.*

This was an action in the nature of an action of ejectment to recover possession of lot No. 3, in block No. 11, in the city of Hannibal. It was commenced August 16, 1851. Plaintiff claims title under one Abram Bird. The lot in controversy is embraced in a tract of 640 acres patented to the said Bird or his legal representatives. The patent bears date December 1st, 1824. The city of Hannibal is located upon said tract of 640 acres. The defendants insist that a portion of the Bird title has enured to them. It is conceived unnecessary to set forth fully the facts upon which this enurement is claimed to rest. The defendants also rely upon the statute of limitations as a bar to the entire action. The facts, so far as they bear upon this defence, are as follows: In the years 1818 and 1819 there was a company known as the "Hannibal Company." It was composed of Moses D. Bates, Stephen Rector, Thomas C. Rector, William V. Rector, Richard Gentry and Thompson Bird. The Hannibal Company laid out the town of Hannibal. In the year 1819, Moses D. Bates, acting for said company, made a public sale of lots in the town of Hannibal. The lot in controversy was sold by said Bates to one Robert Masterson. No deed was executed and delivered to said Masterson by Bates. The consideration of the sale to him was his building upon the lot. By a

deed dated April 15, 1819, four members of said company—
Stephen Rector, William V. Rector, Richard Gentry and
Thomas C. Rector—conveyed said lot to Masterson by the
following deed of conveyance: "This indenture, made and
concluded this fifteenth day of April, 1819, between Thomas
C. Rector, Stephen Rector, William V. Rector, Moses D.
Bates, Thompson Bird and Richard Gentry, all of the terri-
tory of Missouri, of the first part, and Robert Masterson, of
the county of Pike, and territory aforesaid, of the other part,
witnesseth, that the said parties of the first part, for and in
consideration of the sum of one dollar (and being the first
improver) to them in hand paid or secured to be paid, as
hereinafter specified, have granted, bargained and sold, and
by these presents do grant, bargain and sell unto the said
party of the second part, his heirs and assigns forever, a cer-
tain lot or parcel of land situate, lying and being in the town
of Hannibal, county of Pike, and territory of Missouri,
known and distinguished on the plat of said town by lot num-
ber three, of block number eleven, as by reference to the plat
of said town: to have and to hold the said lot and premises,
with the appurtenances, unto the said party of the second
part, his heirs and assigns forever; provided always, never-
theless, that whereas. the said party of the second part has
this day made, executed and delivered to the said parties of
the first part three several notes, bearing equal date with
these presents, to secure the payment of the consideration
aforesaid in the manner following—that is to say, one for the
sum of 33⅓ cents, to be paid in six months, after the date
thereof—one for the sum of 33⅓ cents, to be paid in twelve
months after the date thereof, and one for the like sum, to
be paid fifteen months after the date thereof: now the con-
dition of this indenture is such, and it is understood and
agreed between the parties aforesaid, that the described lot
and premises shall be and is hereby mortgaged and pledged
to secure the said several sums of money in the said notes
respectively specified, and every and all of them; and if the
the said party of the second part shall not well and truly pay

or cause to be paid unto the said parties of the first part the said several sums of money in said notes specified, or any or either of them, according to the tenor and effect of the said notes respectively, then and from thenceforth this present indenture and the estate hereby conveyed or granted shall cease, determine and become absolutely null and void to all intents and purposes, and the said lot and premises, and all the estate, right, title and interest of the said party of the second part, of, in and to the same, shall be and the same is hereby assigned, transferred and relinquished to the said parties of the first part, their heirs and assigns forever, any thing before herein contained to the contrary notwithstanding. In testimony whereof, the said parties of the first part have respectively set their hands and affixed their seals the day and year first aforesaid. [Signed] Stephen Rector (seal), William V. Rector (seal), R. Gentry (seal), Thomas C. Rector (seal)."

The title of the Hannibal Company to the site of the town of Hannibal proved defective. After the date of the purchase from said company by Masterson of the lot in controversy, an undivided interest of one-eighth vested in William V. Rector, one of the parties to the above deed, by virtue of mesne conveyances from the heirs of Abram Bird. It is claimed by defendants that the interest so acquired enured to to the benefit of Masterson and those claiming under him.

Masterson built a house on the lot in the year 1819. He never occupied it himself. He sold and conveyed it in the year 1822 to Vanlandingham. The evidence tended to show that persons holding under Vanlandingham occupied said house from 1822 until about the year 1832 or 1833, when the house fell or was torn down. A portion of the materials seems to have remained on the premises until a new house was built upon the lot in the year 1839 by tenants of Vanlandingham. There was also evidence tending to show that after the house was deserted some of the logs were sold by Vanlandingham. It was admitted that defendants and Vanlandingham, under whom they claim, were in possession of said lot from 1839—

time of building the new house—down to the time of the institution of this suit. The defendants also adduced in evidence the assessor's books and tax receipts, showing that Vanlandingham had assessed the lot in controversy as his, and had paid taxes thereon to the state and county from 1823 until this suit was brought. The court, on motion of plaintiff, excluded these tax receipts, &c., from the jury.

The court gave the following instruction asked by plaintiff: " 5. In order to enable defendants to succeed in their plea of 'possession for twenty years,' they must prove to the satisfaction of the jury that they and those under whom they claim their title have had possession of the lot in controversy for twenty years before the institution of this suit ; and they must also believe that such possession was an actual, continued, visible, notorious, distinct and unbroken possession in the said defendants and those under whom they claim ; and unless the jury believe from the evidence that such a possession did exist for twenty years before the institution of this suit, they must find as to this issue for the plaintiff Draper."

The court gave the following instruction asked by defendants : " If the jury believe that Stephen Rector, William V. Rector, Richard Gentry and Thomas C. Rector sold or gave the lot in controversy to Robert Masterson in the year 1819, and that said Masterson entered into the possession of said lot, claiming it as his own, and held possession by himself and tenants until the year 1822, and then by deed sold the said lot to Vanlandingham, and the said Vanlandingham then entered into the possession of said lot, either by himself or tenant, and that said Vanlandingham and those claiming under him have held possession of said lot adversely to the plaintiff and those under whom he claims until the institution of this suit, they will find for the defendants." The court, of its own motion, gave the following among other instructions : " 4. To make good the defence of the defendants under the statute of limitations, the jury must find that the defendants, or those under whom they claim, or their tenants,

had actual, continuous, visible possession of said lot, claiming the same adversely to the plaintiff, and those under whom he claims, for twenty years next before the commencement of this suit. This possession is not constructive ; but it 'must have been by occupation or cultivation, or by other acts of ownership which were visible, notorious and continuous. If these facts are found by the jury they should find a verdict for the defendants ; if not, as to this defence the plaintiff should have a verdict."

The court refused the following instructions asked by plaintiff : " 6. If the jury should believe from the evidence that defendants, and those under whom they purchased, claimed the title to the lot in controversy for a period of twenty years prior to the institution of this suit, and paid taxes on and exercised acts of ownership over the same, but that they did not either by themselves or tenants have continuous, actual, and unbroken possession of the lot for the full period of twenty years before this suit, then the jury should find for plaintiff."

The jury found for defendants.

*Lamb & Lakenan* and *Richmond,* for appellant.

I. The defendants failed to show an unbroken possession for twenty years. From 1832 till 1837 or 1838 there was no occupancy of the lot ; it was not enclosed—never had been ; the house was torn down ; and the possession was abandoned. Tax receipts can be no evidence of that visible and open possession required to sustain the plea of the statute of limitations. (10 Watts, 141 ; Angell on Limitations, 410, 415, 429 ; 2 Smith L. C. 491 ; 5 Cow. 219 ; 12 Johns. 367.)

*E. G. Pratt,* for respondents.

SCOTT, Judge, delivered the opinion of the court.

As the defendants claimed a portion of the premises in controversy by title, and relied on the statute of limitations as a complete bar to the plaintiff's action, and there being a verdict against the plaintiff on the whole case, it is obvious

that it turned on the statute of limitations, as that was the only defence made to the entire demand. This view of the record will relieve us of the necessity of inquiring into the propriety of the instructions relative to the acts set up by the defendants and alleged by them to confer a title to a portion of the lot in dispute ; for if the statute of limitations is a bar to the entire demand, there can be no need of inquiring whether the defendants had any other defence to a portion of the lot claimed by plaintiff. The instructions given in relation to the statute of limitations were sufficiently stringent against the defendants, as courts have rarely laid down the law more strictly against those relying on the bar of the statute of limitations than was done by the court below. There has been one mis-trial, and two verdicts have passed against the plaintiff on this issue, and it would seem needless to submit the matter a fourth time to the jury.

There was evidence on which the verdict of the jury could be vindicated. Although our courts hold that an entry without color of title will enable the party in possession making it to defend himself under the statute of limitations, yet an entry with a color of title may be supported by a less weight of evidence than a bare entry by an intruder under no claim of right. The person under whom the defendants claim actually performed the condition on which the lot was to become his property. The non-payment of the nominal consideration can not be shown to defeat a deed. (Meriam v. Harson, 2 Barb. Ch. 267.) The circumstance that the deed was executed only by some of the proprietors is one of no weight, as the evidence abundantly showed that as against them all the original purchasers would have been entitled to a conveyance for the lot. After Masterson had acquired a right to a title from those under whom he entered, their title failed, and a portion of them subsequently acquired a valid title to a tract on which the town was laid out, and he continued in possession in the manner stated by the witnesses, and never was disturbed by any one until Draper instituted this suit setting up title under a quit claim deed. And it is

worthy of observation that it does not appear that Glasscock, under whom Draper claimed and who acquired title long subsequently to the entry of Masterson, ever had a conveyance for the specific lot in controversy, but claimed by a general description conveying a large tract alleged to include the premises in dispute. The town existed only on paper ; to invite settlers lots were granted on condition that they should be improved. The first title having failed, and some of the first proprietors subsequently becoming owners of a valid title, they may have been unwilling that the first *bona fide* settlers should be disturbed, or their sense of justice may have recognized the claim of Masterson.

As the statute proceeds upon the ground of the acquiescence of the owner of the land, visible and notorious acts of ownership must be exercised by the claimant, as otherwise there can be no ground for such a supposition, when the acts are clandestine or of such a character as can impress no person with the belief that they proceed from a claim of ownership. It is no easy matter to say what is an adverse possession. It is a question compounded of law and fact, and every case in which it is involved must be determined by its own circumstances. What is adverse possession is one thing in a populous country, another thing in a sparsely settled one, and still a different thing in a town or village. The law, as stated by the Supreme Court of the United States, in the case of Ewing v. Burnett, 11 Pet. 53, and other cases, seems very appropriate to the circumstances of this case—that to constitute an adverse possession there need not be a fence, building or other improvement made ; and that it suffices for this purpose that visible and notorious acts of ownership are exercised over the premises in controversy for the time limited by the statute ; that much depends upon the nature and situation of the property, the uses to which it can be applied, or to which the owner or claimant may choose to apply it ; that it is difficult to lay down any precise rule in all cases, but that it may be safely said, that where acts of ownership have been done upon land, which from their nature indicate a

notorious claim of property in it, and are continued suffi-
ciently long, with the knowledge of an adverse claimant,
without interruption or an adverse entry by him; such acts
are evidence of an ouster of a former owner, and an actual
adverse possession against him, provided the jury shall think
that the property was not susceptible of a more strict or
definite possession than had been so taken and held; that
neither actual occupation, cultivation or residence are neces-
sary where the property is so situated as not to admit of any
permanent useful improvement, and the continued claim of
the party has been evidenced by public acts of ownership,
such as he would exercise over property which he claimed
in his own right, and would not exercise over property which
he did not claim.

We do not maintain that the payment of taxes is evidence
of an ouster of the true owner; but in a question of ad-
verse possession, which depends on so many circumstances,
such payment is a fact to be weighed by a jury in consider-
ing it. It would be an argument against one claiming to
hold land, that he should for twenty years fail to pay the
annual assessments upon it. If unexplained, such omission
would certainly weaken the pretence that he claimed the
land as his own, as such conduct is contrary to the course of
men of ordinary prudence in relation to property to which
they set up a claim. The payment of taxes may go to the
jury with other circumstances, and this was a case in which
such a fact was very appropriate for the consideration of the
triers of the fact.

There was no error in permitting evidence to be received
respecting the circumstances under which Masterson orig-
inally entered into the possession of the lot. There is no
doubt that one who enters under an agreement to purchase
can not set up the statute of limitations as a bar to an eject-
ment by the owner. His occupation, under such circumstan-
ces, will not be adverse to him by whose permission he en-
tered. But if afterwards he asserts a title hostile to that
under which he took possession for a sufficient length of time,

with a knowledge of the owner, his possession will be protected by the statute. But this is no such case. Masterson did not enter under an agreement to purchase. He shows his deed, not as conferring a valid title, but as evidence that he took possession under color of title.

Judge Ryland concurring, the judgment will be affirmed; Judge Leonard absent.