COOK, *Appellant*, v. FARRAH *et al.*

DIVISION ONE.

---

1. **Tax Deed**: RECITAL: NOTICE OF SALE. A tax deed is defective where the recital of notice of sale is simply that the notice was given according to law.

2. **Adverse Possession.** Where a separate tract of land which is half prairie and half timber might be easily inclosed and is fit for cultivation, the erection of temporary structures, pasturing of hogs, cutting timber and payment of taxes under claim of ownership by one residing a mile and a half from it does not constitute adverse possession.

Cook v. Farrah.

3. **Landlord and Tenant**: ATTORNMENT: ESTOPPEL. A lessee who receives possession of the premises from his lessor, and who afterwards purchases the latter's title, is not estopped to assert adverse ownership under it against another claimant, although in the meantime he has attorned to the latter.

4. **Practice**: DECLARATIONS OF LAW: NON-REVERSIBLE ERROR. The purpose of declarations of law in the trial of a cause without a jury is to indicate the theory on which the court tried the case, and the refusal of a proper declaration will not necessarily constitute reversible error.

*Appeal from Ralls Circuit Court.*—HON. THOMAS H. BACON, Judge.

AFFIRMED.

*Silver & Brown* for appellant.

(1) The court should have given instructions, numbered 1 and 2, as asked by plaintiff. (2) Plaintiff's instruction, numbered 3, should have been given. The evidence shows that the defendant Farrah certainly became plaintiff's tenant by the Murphy assignment of September 22, 1880, which Farrah formally accepted in writing at the time, and, this being the case, he was estopped to assert a title antagonistic to plaintiff, acquired during his holding under plaintiff. Murphy's lease, when Farrah acquired it, had until March 1, 1882, to run; and Farrah's title from the Browns having been acquired on October 20, and December 11, 1880, it falls within the above principle of law. *First.* A tenant is estopped to deny his landlord's title. *Shepard v. Martin*, 31 Mo. 492; *Walker v. Harper*, 33 Mo. 592; *Higgins v. Turner*, 61 Mo. 249; *Loring v. Harmon*, 84 Mo. 123. *Second.* Such estoppel does not depend upon a deed or written lease, but is regarded as an incident to the relation of landlord and tenant. *Lowery v. Henderson*, 60 Tex. 291. So mere occupation by the tenant will estop him from denying his landlord's title. *Coburn v. Palmer*, 8 Cush. 124; *Towne v. Butterfield*, 97 Mass. 105; *Gage v. Campbell*, 131 Mass. 566.

*Third.* The estoppel not only prevents the tenant from attacking his landlord's title as bad in itself, but also disables him from setting up any outstanding title which the tenant may have subsequently purchased. *Blight's Lessee v. Rochester,* 7 Wheat. 535 ; *Wilson v. Watkins,* 3 Pet. 43 ; *Hodges v. Shields,* 18 B. Mon. 828 ; *Ryerson v. Eldred,* 18 Mich. 12. Or any title which he may have acquired prior to the date of the lease. *Sharpe v. Kelly,* 5 Denio, 431. *Fourth.* The estoppel applies whether the landlord's title be legal or equitable. *Cooper v. Smith,* 8 Watts, 536. And even when the lessor's possession was itself tortious. *Mishner v. Reding,* 12 Me. 478. *Fifth.* The estoppel extends to and will affect the assignee of the leasehold. *Doe & Co. v. Alexander,* 4 Dev. & Bat. Law, 40 ; *Cooper v. Smith,* 8 Watts, 536. Or one taking possession as successor to the tenant with his consent. *Tompkins v. Snow,* 63 Barb. 523. Or to anyone who takes the place of a tenant or claims under or through him. *Furley v. Rodgers,* 1 A. K. Wash. 245 ; *Newman v. Mackin,* 13 S. & M. 383 ; *Tilghman v. Little,* 13 Ill. 239 ; *Jackson v. Davis,* 5 Cow. 123. *Sixth.* So the estoppel applies to an adverse claimant who obtains possession through the tenant. *Stewart v. Roderick,* 4 W. & S. 188 ; *Doty v. Burdick,* 83 Ill. 473. *Seventh.* And to one who is admitted to defend the action for possession of the land in lieu of the tenant. *Doe & Co. v. Davis,* 4 Dev. & Bat. Law, 300. So the estoppel applies where the tenant has acknowledged two landlords. *Carter v. Marshall,* 72 Ill. 609 ; *Miller v. Bonsadon,* 9 Ala. ( N. S.) 317 ; *Sheperd v. Martin,* 31 Mo. 492. Applying the above principles of law, it is clear that instruction, numbered 3, as asked by plaintiff, should have been given. ( 3 ) Instructions, numbered 2, 3, 4 and 5, given for defendants, were all erroneous. *First.* There is no place in this case for instructions on the question of adverse possession ; it appearing from the evidence that the

relation of landlord and tenant existed between plaintiff and Farrah, that fact of itself authorized plaintiff's recovery. *Loring v. Harmon*, 84 Mo. 123. The estoppel, by reason of the relation of landlord and tenant, applies not only to the tenant, but to one admitted to defend the action for the land in lieu of the tenant. *Doe & Co. v. Davis*, 4 Dev. & Bat. Law, 300. And applies also as against the tenant when he has acknowledged two landlords. *Second.* Instruction, numbered 3, given for defendants, did not properly declare the law on the question of adverse possession. The evidence showed that defendants had knowledge of plaintiff's claim of ownership, and that but a minor part of the land was fit for cultivation, and the facts rather fall within the cases of *Draper v. Shoot*, 25 Mo. 197 ; *Leeper v. Baker*, 68 Mo. 400 ; *Miss. Co. v. Vowels*, 101 Mo. 225. " A fence is not necessary to constitute adverse possession." 101 Mo. 225. The uninterrupted payment of taxes for twenty-four successive years is powerful evidence of claim of right. *Ewing v. Burnet*, 11 Peters, 41. Here the taxes were paid by plaintiff and his grantor for almost that period. (4) Instruction, numbered 5, given for defendant was wrong. Farrah having, in writing, on September 22, 1880, acknowledged and accepted a tenancy under plaintiff, he must surrender possession to plaintiff before asserting title by limitation or otherwise. *Green v. Munro*, 9 Vt. 37 ; *Houston v. Farris*, 71 Ala. 510 ; *Ryerson v. Eldred*, 18 Mich. 12; *Hughes v. Watt*, 28 Ark. 153 ; *Doty v. Burdick*, 83 Ill. 473 ; *Loring v. Harmon*, 84 Mo. 123. Farrah having become plaintiff's tenant and entered into possession in 1880, and this action having been begun in 1887, there is no place for the ten years' bar. (5) Instruction, numbered 6, given for defendants, is erroneous, for the reasons given and authorities cited in point 2, *supra*, of this brief. *First.* The surrender of his term by Murphy and the substitution of Farrah, with consent of plaintiff, made September 22, 1880, had

the effect of ending Murphy's tenancy, and created a new one in Farrah from said date. *Kerr v. Clark*, 19 Mo. 132; *Matthews v. Tobener*, 39 Mo. 115; *Hutchison v. Spencer*, 79 Mo. 496. *Second*. Farrah, after having accepted a tenancy on September 20, 1880, under plaintiff, could not thereafter purchase either an outstanding term of years or the fee, if antagonistic to plaintiff's title. He could not buy the alleged title in fee of the Browns; *a fortiori* he could not so purchase a term of years in Murphy and derive from them. That would be in fact purchasing the adverse title of the Browns. Where the defendant has acknowledged two landlords, he is estopped as to both. *Shepard v. Martin*, 31 Mo. 492; *Carter v. Marshall*, 72 Ill. 609; *Miller v. Bonsadon*, 9 Ala. (N. S.) 317. (6) The instruction given by the court of its own motion was equally erroneous, for the reasons given last, *supra*, as well as under point 2, *supra*. It is undoubtedly true that, if a tenant attorns to a stranger, such act is void as against his landlord, and does not affect his possession. But in this case the defendant Farrah first became plaintiff's tenant and thereafter attorned to the Browns, a stranger. The statute and decisions relied on by respondent apply in our favor. The respondents are tripped up by their own authorities.

*Reuben F. Roy* for respondents.

(1) The deed from Houston, register of lands, to Menefee, was not acknowledged. *Stierlin v. Daley*, 37 Mo. 483; *Dalton v. Fenn*, 40 Mo. 109. (2) Both of the tax deeds offered in evidence by plaintiff were defective in their recitals as to notice of sale, simply stating that notice was given "according to law." The particulars as to the manner of giving notice of sale, the length of time of notice, and time and place of sale, and of property to be sold, should have been given, and these particulars were not recited in the tax deeds. *Spurlock v. Allen*, 49 Mo.

178; *Abbott v. Doling*, 49 Mo. 302; *Large v. Fisher*, 49
Mo. 307; *Bosworth v. Bryan*, 14 Mo. 575; *Lagroue v.
Rains*, 48 Mo. 536; Acts of 1843, sec. 22, p. 140; R. S.
1845, secs. 5 and 7, p. 948. (3) The tax deed from John
Jameson to Menefee should have recited that the sale
was publicly made. Acts, 1843, sec. 3, p. 138; *Sullivan
v. Donnell*, 90 Mo. 278. (4) The court properly
refused instruction, numbered 3, asked by plaintiff.
*First.* The instruction should have been as broad as the
issue. *Greer v. Parker*, 85 Mo. 107; *Jackson v. Bowles*,
67 Mo. 609; *Fitzgerald v. Hayward*, 50 Mo. 516. *Second.* The lease from plaintiff to Murphy, read in evidence, was for a term beginning on March 1, 1878, for four
years, and the writing itself purports to have been made
on February 21, 1880, and is a recital of a former parol
lease, thus bearing suspicious marks; while the lease
from Brown & Brown to Murphy purports to have been
made on January 15, 1877, and is for a term of four
years, beginning on March 1, 1877, and the testimony
for defendant shows that Murphy went into possession
about March 1, 1877, under the Brown lease as the tenant of the Browns. Such being the case, the subsequent
attornment of Murphy to Cook and the attornment by
Farrah as assignee to Cook were both void. R. S. 1889,
sec. 6373; *McCartney v. Auer*, 50 Mo. 395; *Bank v.
Clavin*, 60 Mo. 559; *Rutherford v. Ullman*, 42 Mo. 216;
*Clampitt v. Kelley*, 62 Mo. 571; *Farrar v. Heinrich*, 86
Mo. 521; *Schultz v. Arnot*, 33 Mo. 172. *Third.* When
suit is brought by the stranger to whom tenant has
wrongfully attorned, against the tenant, the tenant can
defend on the ground that he came into possession under
lease from prior lessor and that the attornment was void;
and the prior landlord can be made a party defendant
and set up the same ground of defense. Neither landlord nor tenant is estopped to make the defense. *Schultz
v. Arnot*, 33 Mo. 172; *Farrar v. Heinrich*, 86 Mo. 521.
*Fourth.* The case of *Shepard v. Martin*, 31 Mo. 492,
cited by counsel for appellant, on pages 38 and 40 of

appellant's brief, is not authority on this point, for the reason that that case was one where the tenant leased the ground without the house thereon from one landlord, and leased the house from the other landlord, and is not a case of two leases to same property. *Fifth.* The record in this case does not show that Farrah appeared as a witness in this case, and the testimony of defendant, A. F. Brown, shows that Farrah has sold the land and is now living in Cole county, so that the defendants, Brown & Brown, are the only real parties defendant herein. (5) Instructions, numbered 2, 3, 4 and 5, given for defendants, were properly given. *First.* Instruction numbered 2, was, in effect, a declaration by the court that the plaintiff's tax deeds were void, and that the attornment of Farrah to Cook was void, both of which views were correct under the authorities cited in points one and two above. *Second.* Instruction, numbered 3, for defendants, was correct. *Music v. Barney*, 49 Mo. 458; *Draper v. Shoot*, 25 Mo. 203; *Swayze v. Bride*, 34 Mo. App. 414.

BRACE, J.—This is an action in ejectment for the south half of the southeast quarter of section 26, township 53, range 7, west, in Ralls county, instituted on the tenth of October, 1883. The petition is in the usual form. The answer of defendant Farrah denied specifically each of the material allegations of the petition, and set up the statute of limitations. Afterwards, on their motion, Andrew F. and William C. Brown were made parties defendant (on the ground that they were said Farrah's grantors and warrantors), and filed their answer, which was a general denial and a plea of the statute of limitations. The case was submitted to the court without a jury. The finding and judgment were for the defendants, and plaintiff appeals.

The plaintiff, to show title, introduced two deeds to Alvin Menefee for the southeast quarter of section 26, township and range aforesaid, one from the sheriff of

Ralls county for taxes delinquent for the year 1842, bearing date September 3, 1844, and one from the register of lands under a sale for taxes delinquent for the year 1845, bearing date December 28, 1847. A warranty deed from Menefee and wife to plaintiff for the south half of said quarter section (the premises in controversy), bearing date June 1, 1865, and a warranty deed from Menefee and wife to Jesse M. Baskett for the north half of said quarter section of the same date.

Plaintiff then read in evidence receipts for taxes paid by said Menefee on said quarter section for the years 1850, 1852, 1853, 1858, 1859, 1860, 1862, 1863 and 1864, and receipts for taxes paid by the plaintiff on the south half of said quarter section for the years 1866, 1867, 1868, 1869, 1870, 1871, 1872, 1873, 1875, 1876, 1877, 1880 and 1882.

The plaintiff then introduced parol evidence tending to prove that Menefee, from about the year 1853 until he sold to Cook and Baskett, always claimed as his own the said quarter section under his tax title; that his home farm was about a mile and a half from this land; that about half of it was prairie and half timber land; that he cut and took building timber from the land; that at one time he sold some rails, and at another got some board timber; and in 1861 got the timber for a large barn off the land; that he gave sills for a schoolhouse and for a church off the land; that he used the land for keeping and feeding his hogs, and marked them there, and put up four or five open rail pens in the woods on the land for these purposes; that he sold the land to Cook and Baskett and they divided it to suit themselves. Cook took the south, and Baskett the north, half, and Menefee made a deed to each for his tract.

About twenty-five acres of the south, or Cook's, half (the premises in controversy) was prairie, the remainder timber; in the fall of the year after his purchase in the spring, Cook commenced getting out rails,

lumber and timber for the improvement of his prairie farm some four miles distant, and firewood, and continued to thus use the tract until some time in the year 1875, when he leased the premises by parol to one Vincil for four years from the spring of 1876; that Vincil went on the land in the fall of 1875, under the lease, and built a small box house, with a shed adjoining for a blacksmith shop. In the spring following, Vincil fenced a small patch for a garden, and soon thereafter abandoned the premises; in the fall of 1876, the plaintiff, by parol, leased the premises to James Murphy for four years from the spring of 1877. In the spring, Murphy declined to take possession, and requested that a man by the name of Adams be permitted to go in his stead; to this plaintiff assented. Adams went on the place, rebuilt the house, dug a well and fenced a part of the land and made something of a crop.

In the spring of 1878, Adams, having bought land elsewhere, was desirous of leaving the premises, to which plaintiff assented; whereupon a parol agreement was made between plaintiff and Murphy, by which Murphy was to have the use of the land for a term of four years, commencing on the first of March, 1878. Adams went off the land and Murphy went on it, and thereafter continued in the occupation of the premises until the fall of 1880. On the twenty-first of February, 1880, a memorandum of the terms of this parol agreement was signed by Murphy and the plaintiff, and on the twenty-second day of September, 1880, the contract evidenced by this memorandum was assigned by indorsement thereon in writing by Murphy to defendant Farrah, who thereupon in like manner assumed the responsibilities of Murphy in said contract; to this assignment the plaintiff consented; within ten days thereafter, Farrah was found living on the premises, and was there when this suit was brought.

The evidence for the defendant showed that on the third of April, 1872, William M. Ely and defendant, W. C. Brown, acquired the government title to the premises, by mesne conveyances from the original patentee, and that Ely conveyed his undivided interest therein to defendant, Andrew F. Brown, on the tenth of February, 1875, by quitclaim deed. On the fifteenth day of January, 1877, the Browns, by a written lease duly executed, leased the premises to Murphy for a term of four years, from the first of March, 1877. On the seventh of October, 1880, the Browns assigned their interest in the lease evidenced by said writing to J. H. Farrah. Andrew F. Brown and wife, by warranty deed dated October 29, 1880, conveyed his undivided interest in the premises to defendant Farrah, and William C. Brown and wife, by warranty deed dated December 11, 1880, conveyed his interest in said land by like deed to the said Farrah.

Defendants introduced parol evidence tending to prove that, when Ely and W. C. Brown purchased the land in 1872, they went over the land ; that about twenty-five or thirty acres was prairie land ; that there were no houses, structures, pig-pens or any sort of inclosures, or any kind of improvements, on the land, and no considerable amount of timber had been cut off the land ; that they had the tract surveyed, and in June or July, 1873, built a log house on the land and began making rails and cutting timber on the land in the summer of that year ; that Murphy went into possession under the written lease of January 15, 1877, and inclosed the tract with a fence, and remained in possession until the fall of 1880.

I. The tax deeds read in evidence were defective under repeated rulings of this court, the recitals as to notice of sale stating simply the notice was given according to law ( *Moore v. Harris*, 91 Mo. 616, and cases cited ), and were so declared by the trial court, and were treated as merely giving color of title. The court

declared the law in the form of instructions, and the errors urged here are upon the instructions only. Upon the question of title by adverse possession under the statute of limitations the court gave two instructions for the plaintiff and three for defendants.

II.   The third instruction given for the defendants, which is especially objected to, is as follows:   "If the court ( sitting as a jury ) believes from the evidence in the case that the land in controversy or any considerable part thereof was susceptible of a definite occupation or possession, that is, that said land or any part thereof was fit for pasture or cultivation without clearing or cutting away the timber thereon—then in order to constitute the possession of plaintiff or that of those under whom he claims, adverse as required in the foregoing instruction, the court must find from the evidence in the cause that the plaintiff or his grantor, Menefee, either in person or by their tenants, built permanent structures on said land, or actually inclosed or cultivated said land or some part thereof for the period of ten years prior to the institution of this suit, and that it is not sufficient in such a case that plaintiff, and his grantor, Menefee, paid the taxes on said land, kept off trespassers, cut timber, erected temporary structures, and pastured hogs thereon under a claim of ownership."

It is contended that this instruction is erroneous upon the facts in this case, and we are cited to five cases in support of this contention:   The first is *Draper v. Shoot*, 25 Mo. 203, which it will be unnecessary to review, in view of the fact that the rule laid down in that case is repeated in the later case of *Leeper v. Baker*, 68 Mo. 400, the second case cited by plaintiff, in which the facts are more nearly analogous to the case in hand. In this latter case the court says:   "A fence, building or other improvement is not essential to constitute an adverse possession.   Acts of ownership, under a claim of right, visible, are sufficient to authorize the court to

find such possession, and the nature of these acts of ownership must depend *on the uses of which the land was capable*," citing *Draper v. Shoot, supra ; Fugate v. Pierce*, 49 Mo. 441; *Musick v. Barney*, 49 Mo. 458 ; *Turner v. Hall*, 60 Mo. 271, and *Key v. Jennings*, 66 Mo. 356, and continuing the court says: "In *Draper v. Shoot*, it was held that to constitute an adverse possession there need not be a fence, building or other improvement made, and that it suffices for this purpose that visible and notorious acts of ownership are exercised over the premises in controversy for the time limited by the statute; that much depends upon the nature and situation of the property, the uses to which it can be applied or to which the owner or claimant may choose to apply it; that it is difficult to lay down any precise rule in all cases, but that it may be safely said, that where acts of ownership have been done on·land, which from their nature indicate a notorious claim of property in it, such acts are evidence of an ouster of a former owner, *provided the property was not susceptible of a more strict or definite possession*."

The decisive question in *Leeper v. Baker* was whether the defendant had such adverse possession of the forty acres in dispute, continued for ten years, as would defeat the plaintiff's rights under his superior title ; it was part of an entire tract of six hundred and ninety-one acres, conveyed by a deed under which defendant acquired good title to, and was in actual possession of, all the land (six hundred acres of which was under fence) except this forty, which was swamp land unfit for cultivation, and only valuable for the timber on it, and could not be fenced up without the risk of its being washed away by high water ; the defendant paid the taxes on it for more than ten years before suit was brought, used the pond on it for watering his stock, and supplied himself with rails and house logs from it. There was also evidence tending to show that

Cook v. Farrah.

the plaintiff had actual knowledge of his claim to the forty. Upon this state of facts the court held that a verdict for the defendant under proper instructions, upon the law as laid down in the cases cited, was not without evidence, and sustained the judgment thereon.

The acts of ownership in that case are quite analogous to the acts of ownership as shown by the evidence and hypothetically stated in the instruction in this; but there is a world of difference between the land upon which these acts of ownership were performed, its situation and the relation of the parties to it.

In that case, the land was a small tract of forty acres within the boundaries of a large tract which belonged to the claimant; and of which he was in actual possession claiming title to the whole; it was valuable only for the wood and water that was on it; it was not fit for pasture or cultivation, and an inclosure around it could not be maintained, and was not called for by any reasonable use to which it could be put. The court could well say that the land was not susceptible of more strict or definite occupation; moreover, from the evidence, it could be reasonably inferred that the true owner had notice that the defendant claimed it as his own.

In this case the land was a large, separate and independent tract of one hundred and sixty acres upon which the acts of ownership were performed by Menefee, distant from his home farm a mile and half, one-half of it prairie ready for the plow or herd, the moment it was inclosed, susceptible of definite occupation, by inclosure, by cultivation and permanent structures. Moreover, in this case, there was not a scintilla of evidence tending to prove that any of the true owners of the land had any knowledge of the acts of ownership or claim by Menefee from the time he commenced paying taxes on the land, and exercising the other acts of ownership (detailed in the statement) in 1882 or 1883, up to the time he sold to Cook and Baskett, or afterwards until

Ely and Brown entered upon the land in dispute in 1873, and commenced their improvements, and the struggle began as to who should hold possession thereof. The case of *Leeper v. Baker*, and the other precedent cases cited therein, instead of being authority against the instruction in this case might well be cited in its support.

The next two cases cited by plaintiff's counsel in support of their contention are *Fitch v. Gosser*, 54 Mo. 267, and *Ware v. Johnson*, 55 Mo. 505. In the former it was held that one having an equitable title to a farm of two hundred acres consisting of a prairie farm of one hundred and sixty acres, and forty acres of timber land a mile or two away, leased to tenants, who were allowed to cut timber for the use of the farm and firewood from the forty-acre tract, the only value of the timber land being its use for such purposes, and not designed for cultivation or inclosure, could maintain action in the case for a trespass on the forty-acre tract. And in the latter case it was said that "a party may under a deed only giving color of title take such possession as a tract of land may be capable of; as for instance he may claim title and use the tract of land for firewood, saw logs and in every other way that an owner of timber land, unfenced, may in connection with his farm, and such possession will be held to be actual possession, and if invaded he may maintain trespass or forcible entry and detainer as the case may be; * * * when he is so in possession in good faith the real owner must resort to his action of ejectment or other possessory action."

These cases are not in point. But, as if to relieve the instruction of all question as to the case coming within the principle of any *dicta* in those cases or the others cited, the court is required in the instruction to find that a considerable portion of the land in dispute ( the evidence shows twenty-five or thirty acres ) was

susceptible of definite occupation for pasture or culti-
vation, "without cutting away the timber thereon."

The last case cited is *Mississippi Co. v. Vowels,*
101 Mo. 225, which is not at all analogous to the present
case, and in which nothing is said tending to support
the special objection urged to the instruction in ques-
tion ; and such objection upon the plaintiff's own
authority is not well taken. A general objection is
urged against this and the other instructions given for
the defendant on the question of adverse possession, on
the ground that the evidence shows that the relation of
landlord and tenant existed between plaintiff and
defendant Farrah, and there was no question of adverse
possession in the case. As the plaintiff on the trial was
not willing to risk his case on that single issue, but
asked and obtained instructions upon the issue of
adverse possession, he cannot complain that instructions
were also given for defendants upon that issue.

III. On the question of the relation of landlord
and tenant between the parties, the court refused to
give the following instruction for plaintiff : "3. If
the court (sitting as a jury) shall find from the evi-
dence that the defendant Farrah obtained possession
of the premises in question and occupied the same as a
tenant of plaintiff, and was recognized as such tenant,
then no proof of title is necessary on the part of plain-
tiff to enable him to recover in this action. And though
the jury may find from the evidence that defendant
Farrah acquired title to the premises in question from
defendants, A. F. Brown and W. C. Brown, in 1880, yet
if the jury shall further find from the evidence that
said title was so acquired by defendant Farrah during
the time of his tenancy under plaintiff ( the title), so
acquired from defendants Brown and Brown, cannot
be by defendants set up in this action to controvert
plaintiffs."

Gave the following for defendant : "6. Although
the judge, sitting as a jury, may believe from the

Cook v. Farrah.

testimony in the case that, in the year 1880, defendant Farrah agreed with plaintiff and one, J. H. Murphy, the then occupant of said land, that he, Farrah, would assume the obligations of said Murphy contained in a lease of said lands by Murphy from plaintiff, and that Farrah agreed to hold said lease as a tenant of plaintiff, yet if the court finds that, at the time of making said lease between Murphy and plaintiff, the said Murphy was in possession of said land as the tenant of A. F. and W. C. Brown under the written lease read in evidence by defendants, and dated on the thirteenth day of January, 1877, then the attempted leasing of said lands by plaintiff to Murphy was void as to the defendants, A. F. and W. C. Brown, and the subsequent agreement by Farrah with plaintiff to take Murphy's place in said lease and hold said land as a tenant under plaintiff was void and did not constitute defendant Farrah as the tenant of plaintiff, provided the court finds that Farrah purchased said lands from A. F. and W. C. Brown, and took possession of the said land as such purchaser."

And the following on its own motion: "The court declares the law to be that if Murphy, in 1877, leased the land from defendants Brown, and thereunder received from them possession thereof, and in 1878 said Murphy attorned to plaintiff without the knowledge and consent of defendants Brown, and, in 1880, defendant Farrah bought out said Murphy and took from said Murphy an assignment of his holding under plaintiff and accepted plaintiff as his landlord, and afterward said Farrah purchased from defendants Brown their title to the land, the said attornment and the said proceedings thereunder are utterly void as a matter of public policy, and the plaintiff obtained no possession either by said attornment or the said proceedings thereunder; and, although the defendants Brown may have been privy to said proceedings of said Farrah, nevertheless neither he nor the said defendants

Brown are estopped in this case from disputing the said landlordship or the title of plaintiff."

It is strenuously urged that the court committed error in its action upon these instructions. In a case where both the law and the facts are intrusted to the court, the finding of the facts by the trial court will not be reviewed, if there is evidence to support it. In such cases, the office of instructions or declarations of law is to show upon what theory of law the court tried the case. And if from the finding of the court and the instructions given it can be seen that there was evidence to support the finding, and the law applicable to the facts as found is correctly declared, it is not important to inquire whether any particular instruction ought or ought not to have been given.

That the defendant Farrah obtained possession of the premises from Murphy, there is no question; that the possessory right of Murphy at the time he surrendered the possession to Farrah must be the measure of the latter's right, and that he must surrender the possession, into which he was let by Murphy, to him to whom by law Murphy was in duty bound to restore it, would seem to be as evident a proposition as that Murphy was bound to restore the possession to him by whom he was let in.

The crucial question on this issue was from whom did Murphy receive his possession. The court found as a fact, as is evident from its instructions and finding, that in 1877 Murphy leased the lands from defendants, the Browns, and "thereunder received from *them* the possession thereof;" this being the case at the end of his term his duty was to return the possession to the Browns, and such was also the duty of Farrah whom he let into his possession. This duty Murphy could not escape by afterwards taking a lease from the plaintiff without the consent of the Browns; neither could any assignee of such lease, the attornment being absolutely void. R. S. 1879, sec. 3080. Neither could acquire or

assert possession under such illegal letting against the landlord who let Murphy into possession and under whom he was holding.

While the relation of landlord and tenant existed between the Browns and Murphy, the relation of landlord and tenant could not be created or exist between plaintiff and Murphy or his grantee as against Murphy's real landlord, the Browns. Farrah then never was the tenant of plaintiff on the facts as found by the court; the attornment of Murphy being void, all holding under that attornment was void.

Instruction, numbered 3, asked by plaintiff would have been well enough, and the numerous authorities cited in support thereof would be in point, if upon the facts in the case the court had found that Farrah was the tenant of the plaintiff, but setting out the ultimate facts found by him, determinative of the question of tenancy, he properly declared upon those facts that Farrah was not the tenant of plaintiff.

The fact that Farrah took the place of the Browns as Murphy's landlord under their assignment of Murphy's lease and acquired the legal title to the reversion by his deeds from them, in no way changed the application of these principles; by the surrender of possession by Murphy to him he became Murphy's tenant, and the subtenant of Murphy's landlord, being at that time Murphy's landlord and the owner of the reversion, by virtue of the assignment and deeds aforesaid, all right of present and future possession was vested in him and so remained until the present suit was brought to divest him of that possession, and he is not estopped from defending that possession by the proceedings under the illegal letting by the plaintiff to Murphy.

The judgment is affirmed. All concur.