NYE, *Appellant*, v. ALFTER.

Division Two, March 18, 1895.

1. **Land:** ADVERSE POSSESSION. Payment of taxes, cutting timber and grazing and watering one's stock on one hundred and sixty acres of unfenced timber and pasture lands capable of being inclosed, and a part of which was suitable for cultivation, and the burning of a lime kiln on the land, do not constitute adverse possession.

2. ———: TAX DEED: RECORDING DEED: COLOR OF TITLE. A person claiming land under a void tax deed does not acquire color of title until after the delivery of the deed to the recorder for the purpose of having it recorded.

*Appeal from Morgan Circuit Court.*—HON. D. W. SHACKLEFORD, Judge.

REVERSED AND REMANDED.

*John D. Bohling* for appellant.

(1) The finding and judgment of the court should have been for the plaintiff. The mere entry on waste and uncultivated and unimproved lands under a survey, or a conveyance or other claim of title, and occasional acts of trespass extending over the statutory period, though coupled with the payment of taxes, are not such acts of possession as will deprive the true owner of his title. Such acts are evidence of an adverse claim of title, but they do not amount to that actual, continued and uninterrupted possession, which is essential to title by adverse possession, for the reason that they do not amount to such a statutory period's notice of an adverse possession as is intended by the statutes. 4 Griff. Am. Reg., 1269; *Cornelious v. Giberson,* 1 Dutcher, 1; *Foulke v. Band,* 41 New Jersey Law, 527. (2) The defendant failed to show an unbroken possession for ten years. There was no occupancy of the land; it was not inclosed, although it was good pasturing land, and part of it susceptible of cultivation. The payment of taxes, the cutting of timber and the burning of a lime kiln upon land of this character does not constitute adverse possession. *Cook v. Farrah,* 105 Mo. 492; *Draper v. Shoot,* 25 Mo. 197; *Fugate v. Pierce,* 49 Mo. 441. (3) Under the first instruction given by the court the finding should have been for the plaintiff. There

was no evidence that the defendant's "acts of owner-
ship upon and in relation to said lands were visible,
open, notorious and continuous for a period of ten
years, such as that if the true owner had visited the
lands he would have been advised of the claim and pos-
session of same." (4) The court erred in refusing the
plaintiff's third instruction, in the nature of a demurrer
to defendant's evidence. There was no evidence to
support the finding of the court. Authorities before
cited. (5) The court erred in refusing the plaintiff's
fourth instruction. *Musick v. Barney*, 49 Mo. 458;
*Key v. Jennings*, 66 Mo. 356.

*B. R. Richardson* and *Draffen & Williams* for re-
spondent.

(1) "A fence, building, or other improvement is
not essential to constitute an adverse possession. Acts
of ownership, under claim of right, visible, are sufficient
to authorize the court to find such possession; the
nature of these acts of ownership must depend on the
uses of which the land was capable." *Leeper v. Baker*,
68 Mo. 400; *Draper v. Shoot*, 25 Mo. 197; *Key v. Jen-
nings*, 66 Mo. 356. (2) The plaintiff can not complain
of the instructions given at his own instance. The
only questions, therefore, are, whether there was error
in refusing the two declarations of law asked by plaintiff,
and whether there was any evidence to support the
finding. (3) *First*. The refusal of the third declaration
of law asked by defendant was manifestly proper, with-
out reference to any question of adverse possession.
The answer in the case was a general denial. Plaintiff's
title, as well as defendant's possession, were in issue,
and depended upon questions of fact. The court could
not peremptorily declare that, as a matter of law,
plaintiff was entitled to recover. *Wilkerson v. Eilers*,

114 Mo. 245. *Second.* There was evidence tending to show adverse possession, and the weight thereof was to be passed upon as a question of fact. *Wilson v. Taylor* 119 Mo. 626. (4) The court below rightly declined to give plaintiff's fourth declaration of law. It singled out part of the facts in evidence, and undertook to declare their effect, and for that reason was erroneous. *Scruggs v. Scruggs*, 43 Mo. 142; *Key v. Jennings*, 66 Mo. 356. (5) There was evidence to support the claim of adverse possession and its weight was for the court. *Draper v. Shoot*, 25 Mo. 197; *Wilson v. Taylor*, 119 Mo. 626. (6) If plaintiff's contention is right, and defendant was never in possession of the land, but merely committed acts of trespass occasionally upon it, then the judgment below was for the right party, on the ground that ejectment would not lie against defendant.

GANTT, P. J.—This is an action of ejectment for one hundred and sixty acres of land in Morgan county, Missouri. Petition in the usual statutory form and the answer a general denial.

The land was entered by Charles M. Nye, in 1858, who conveyed it to William H. Nye, the plaintiff, by general warranty deed on the sixteenth day of April, 1861, which said deed was duly recorded in the recorder's office of Morgan county, on the twenty-fourth day of April, 1861. The plaintiff is a resident of Indiana.

On the tenth day of February, 1881, the land was sold for delinquent state and county taxes under a judgment in favor of the collector against one F. M. Shurte who never had a title to the land, so far as the evidence discloses, and at the tax sale John H. Alfter, the defendant, purchased it, and took a sheriff's deed thereto which was recorded for him November 26, 1881.

This action was commenced on the twenty-ninth day of June, 1891. The cause was tried at the February term, 1893, of the circuit court of Morgan county without a jury and judgment rendered for defendant.

The errors assigned are the refusal of instructions and that the finding of the court was contrary to the law as declared in its instructions or declarations of law.

I. The plaintiff established a good legal title by his documentary evidence and should have recovered, unless there was sufficient evidence of an adverse possession to justify the court in submitting that issue to a jury.

The tax deed was void, as the judgment was rendered against one Shurte, who never owned the land of record or otherwise. Plaintiff was the record owner when the suit was brought and the land sold to defendant. The claim to ownership rests entirely upon the testimony of the defendant himself. As the propriety of giving and refusing instructions depends on this evidence, it is thought best to incorporate it in full.

John H. Alfter, the defendant, testified as follows:

"I reside in the southwest corner of Morgan county, and have for twenty-two years. (Being shown the tax deed under which witness claims color of title, witness continued.) Yes, sir, I recognize that tax deed. I purchased the land described in it here at the courthouse from Charles H. Howard, sheriff, at the February term of court, 1881. I paid Mr. Howard for the land, and *told him as soon as he made out the deed to put it on record* and some time the next fall I found it was recorded. After I bought the land at tax sale, I discovered that the taxes for years 1879, 1880 and 1881 were still unpaid and I paid them. (Witness then identifies tax receipts.) I bought the land because it adjoined mine, and I wanted it for pasturing purposes,

and there was some excellent lime rock on it. I burned a lime kiln on it and I also used it for watering purposes. It was between two pieces of land I owned. I cut some timber on the land."

Cross-examination: "I leased the land to Hammett & Morrison some five years ago for the timber on it. The land had not been cut over prior to the making of the contract. My men cut over the line once before I bought. We hauled fire wood off the land and I grazed my cattle on it, about fifty head, and my hogs. I have paid taxes on the land ever since I bought it.

"Q. Is any of this land fenced, Judge Alfter? A. No, sir.

"Q. Was any part of it ever fenced? A. No, sir.

"Q. What stock did you water on the land? A. My cattle.

"Q. Did not your cattle run out on the range? A. Yes, sir. I drove them across the land from one place to the other.

"Q. Did you water there before you bought it? A. Yes, sir.

"Q. When did you burn that lime kiln on it? A. It is my recollection, that is, to the best of my knowledge, just previous to my buying it, the lime kiln was burned by other parties. I can't say positively whether it was in the spring of 1881 or 1882 that I burned the lime kiln on it.

"Q. You say you cut timber off of it, what kind of timber did you cut? A. Well just a general lot of timber.

"Did you cut any timber on the land in 1881 and 1882? A. Well before that my hands had been cutting timber and had gone over the line previous to my buying the land and that was one of the inducements to buy the land.

"*Q.* When did you cut on it after you bought it?
*A.* Different years.

"*Q.* Is that land suitable for cultivation? *A.* No, sir. Maybe a little on the north part that would be susceptible to cultivation.

"*Q.* You turned your cattle on there to water them? *A.* Yes, sir.

"*Q.* I will ask you if the land was used for any other purpose? *A.* Used as a watering place and washing place frequently.

"*Q.* You don't herd your cattle, do you? *A.* No, sir.

"*Q.* Now, is it not a fact that your cattle grazed on the land before you bought it? *A.* Yes, sir, and they grazed on it afterward."

Defendant then introduced a tax deed by the sheriff to John H. Alfter, conveying all the right, title and interest of one F. M. Shurte in and to the land in controversy. Said deed bears date of February 10, 1881, and was recorded in the recorder's office of Morgan county, on the twenty-sixth of November, 1881, in deed book 29, page 312. Defendant also introduced in evidence tax receipts paid by the defendant from the year 1882 to 1891, inclusive.

The court, at the instance of the plaintiff, gave the following instructions:

"1. To make good the defendant's defense under the statutes of limitation, or claim of adverse possession under color of title, it devolves upon him to show by the preponderance of evidence that he had actual, open, notorious and visible possession of part of the land in controversy under color of title to the whole, claiming the same adversely to the plaintiff, for a period of ten years next before the commencement of this suit. Constructive possession is not sufficient to divest the plaintiff of his title; it must be by occupation or culti-

vation, if the lands are adapted to or susceptible of occupation or cultivation, or by other acts of ownership upon and in relation to said lands, which were visible, open, notorious and continuous for a period of ten years, such as that if the true owner had visited the lands he would have been advised of the claim and possession of same.

"2. If the court should find from the evidence that the land in controversy, or any part thereof, is adapted to or susceptible of occupation or cultivation, then such acts of ownership as the payment of taxes, burning of lime, cutting of timber and grazing of cattle on the land, without the inclosure of any part of the land, is not sufficient to invest the title thereto in the defendant, unless the claim of adverse possession under color of title was known to plaintiff."

The court refused the following instructions asked by the plaintiff:

"3. That under the evidence, the finding must be for the plaintiff.

"4. That the fact that the defendant may have burned lime on the land in controversy, and sold the timber off of it in 1888, and permitted his stock to graze thereon, and paid the taxes on the land, is not sufficient to invest the title to said land in the defendant under the claim of adverse possession under color of title, unless such acts and claims were known to the plaintiff for a period of ten years before the commencement of this suit, and it devolves upon the defendant to show by competent testimony that the plaintiff had knowledge of such acts and claims."

Conceding that the defendant testified truthfully and giving weight to all his testimony, the court should have given the third instruction for plaintiff. This evidence simply proves that the plaintiff's one hundred and sixty acres of land was unfenced, and that it was

grass land, and defendant's cattle grazed on it both before and after he obtained his tax deed. There was water on it, and his cattle and hogs drank it. His hired men cut timber on it before he bought, and he leased it to parties who cut over it. He also cut timber off of it, and paid taxes on it. The true owner was living in Indiana. Had he come over to see his land he would have found no one in possession.

Payment of taxes, cutting timber and permitting one's cattle to graze upon outlying unfenced lands do not constitute that open, notorious, visible possession of land which will deprive the true owner of his title. All of this land was valuable for pasture. It could readily have been inclosed, and a portion was susceptible of cultivation. Under such circumstances property is susceptible of more definite and visible possession. *Pharis v. Jones*, 122 Mo. 125; *Cook v. Farrah*, 105 Mo. 492. There was nothing to indicate a change of ownership. Defendant's exercise of ownership was the same before he set up his claim and afterward. The burning of a lime kiln on a tract of one hundred and sixty acres was not a permanent structure by any means. Others had done the same thing.

The defendant had no color of title by his void tax deed until it was delivered to the recorder for him on the twenty-sixth day of November, 1881. Not until then did he show any claim to the whole tract, and this action was brought in June, 1891, so that the ten years of adverse limitation had not run against plaintiff even if there had been such possession as the law recognizes. *Blodgett v. Perry*, 97 Mo. 275. The judgment is reversed and the cause remanded, with directions to the circuit court to enter judgment for plaintiff. SHERWOOD and BURGESS, JJ., concur.