ELI KEEN, Appellant, v. GEORGE SCHWEIGLER *et al.*, Respondents.

### St. Louis Court of Appeals, April 20, 1897.

1. **Forcible Entry and Detainer:** OWNERSHIP, ADMISSIBILITY OF EVIDENCE OF.  In an action of forcible entry and detainer, evidence offered by defendants as to the ownership by their ancestor of the land in controversy, their acts indicating an intention to retain possession of the same, and its location and situation before and after a change in the channel of the Missouri river, was properly admitted.

2. ———: POSSESSION NECESSARY TO MAINTAIN ACTION.  An action of forcible entry and detainer will not be sustained on a "scrambling possession," but the intention to occupy must be manifested in some open and unequivocal way.

3. **Occupancy of Land:** ACTS NECESSARY TO CONTINUE POSSESSION OF ORIGINAL OCCUPANT.  Where land is not susceptible of occupation for purposes of cultivation, any other act or acts of ownership, which clearly and openly indicate a claim to the property, is sufficient, as the payment of taxes in connection with having the land surveyed, cutting of timber, putting parties on the land to protect it from trespassers, and visiting it from year to year for purposes of supervision and control.

4. **Harmless Instruction.** An instruction, objectionable standing alone, but not misleading taken in connection with other instructions, is harmless.

*Appeal from the St. Charles Circuit Court.*—Hon. E. M. Hughes, Judge.

Affirmed.

*R. C. Haenssler* and *C. W. Wilson* for appellant.

The court erred in admitting in evidence the deeds from Pettengill and others to George and Andrew Schweigler, and the deeds from Andrew Schweigler to George Schweigler. 2 R. S. 1889, sec. 5111; *Spalding v. Mayhall*, 27 Mo. 134; *Gibson v. Long*, 29 *Id.* 134.

The court erred in admitting testimony in relation to the occupation of island number 1, under these deeds by George Schweigler from 1866 to 1876, when the island was washed away by the abrasion of the Missouri river. *Chapman v. Templeton*, 53 Mo. 463, 465.

The court erred in admitting in evidence the survey of N. E. Jenkens. It was not a survey of the land in dispute, and in nowise tended to prove the possession of respondents or to disprove the possession of appellant. *Frederick v. Allgaier*, 88 Mo. 598; *State v. Roberts*, 62 *Id.* 390; *Coole v. R. R.*, 60 *Id.* 333; 1 Greenlf. Ev., secs. 51, 52.

The payment of taxes is not admissible to prove either title or possession. *Chapman v. Templeton, supra; Pike v. Robertson*, 79 Mo. 615; *Musick v. Barney*, 49 *Id.* 458, 464; *Bradstreet v. Kinsilla*, 76 *Id.* 64, 65; *Rouse v. Dean*, 9 *Id.* 298.

A permit to Gerken to take possession and farm the land, had no tendency to prove actual possession in defendants. *Musick v. Barney, supra; Pike v. Robertson, supra; Rouse v. Dean, supra.*

The peremptory instruction directing a verdict of guilty should have been given. *King v. Gaslight Co.*, 34 Mo. 34; *Kennedy v. Pruitt*, 24 Mo. App. 417, 420.

The court committed reversible error in refusing appellant's instructions numbers 4 and 5. *King v. Gaslight Co., supra; Scott v. Allenbaugh*, 50 Mo. App. 134, 135; *Jackson v. Halstead*, 5 Cow. 216, 220, 221; *Trustee, etc. v. Kirk*, 84 N. Y. 220, 221; *Becker v. Van Volkenburgh*, 29 Barb. 319, 324; *Wylie v. Waddell*, 52 Mo. App. 228, 229.

The court committed reversible error in giving the instructions on its own motion. *King v. Gaslight Co., supra; Boogher v. Neece*, 75 Mo. 384; *Wiser v. Chesley*, 53 *Id.* 549; *Turner v. R. R.*, 76 *Id.* 261; *Dyer v. Brarmock*, 2 Mo. App. 432. See, also, *Eystry v. Capelle*, 61 Mo. 581; *Huffmann v. Ockley*, 34 *Id.* 277; *State v. Bailey*, 57 *Id.* 131; *Kennedy v. R. R.*, 36 *Id.* 351.

The court erred in giving instructions asked by respondent. *Scott v. Allenbaugh, supra; Boogher v. Neece, supra; Turner v. R. R., supra; Harbison v. School Dist.*, 89 Mo. 184; 2 R. S. 1889, sec. 5111; *Stone v. Malot*, 7 Mo. 161; *Beeler v. Cardwell*, 33 *Id.* 86; *Craig v. Donnelly*, 28 Mo. App. 34; *Sitton v. Sapp*, 62 *Id.* 204, 205; *Bradley v. West*, 60 Mo. 61; *Pike v. Robertson*, 79 *Id.* 615; *Musick v. Barney*, 49 *Id.* 458; *Bradstreet v. Kinsilla*, 76 *Id.* 65; *Thomas v. Babb*, 45 *Id.* 388; *Fitzgerald v. Hayward*, 50 *Id.* 516; *State v. Smith*, 53 *Id.* 271, 272; *Ligget v. Morgan*, 98 *Id.* 42; *Harty v. R. R.*, 35 *Id.* 368; *Moffat v. Conklin, Id.* 453; *Peck v. Richey*, 66 *Id.* 114, 121; *Meritt v. Given*, 34 *Id.* 98; *Turner v. Loler, Id.* 465.

*T. F. McDearmon* and *Lubke & Muench* for respondents.

The court committed no error in the instructions given for respondents. *Powell v. Davis*, 54 Mo. 315;

*DeGraw v. Prior*, 60 *Id.* 56; *Bradley v. West*, *Id.* 59; *Edwards v. Carey*, *Id.* 572; *Keen v. Schnedler*, 9 Mo. App. 597; *Dyer v. Reitz*, 14 *Id.* 45; *Kennedy v. Prewitt*, 24 *Id.* 415; *Hosli v. Yokel*, 58 *Id.* 169; *School Dist. v. Holmes*, 53 *Id.* 130; *Wylie v. Waddell*, 52 *Id.* 226; *Meriwether v. Howe*, 48 *Id.* 148; *Scott v. Allenbaugh*, 50 *Id.* 130; *Hoag v. Pierce*, 28 Cal. 128; *House v. Keiser*, 8 *Id.* 500. See, also, *Nelson v. Nelson*, 30 Mo. App. 184.

Where the jury are instructed on all issues, it is not error to refuse any number of requests, however well drawn. *Flynn v. R'y*, 43 Mo. App.; *Connor v. Heman*, 44 *Id.* 346.

The number and length of appellant's instructions warranted the court in refusing them. *Back v. Street R'y*, 108 Mo. 179; *Hickman v. Link*, 116 *Id.* 123; *Harkness v. Briscoe*, 47 Mo. App. 196; *Gerard v. Car Wheel Co.*, 46 *Id.* 79.

Instructions should not ignore defense established by the evidence. *Cameron v. Hart*, 57 Mo. App. 142; *Evers v. Shumaker*, 57 *Id.* 454.

These instructions singled out the fact of the construction of the fence by plaintiff, and pasturing stock inside of it, and made the whole case turn upon this. They were properly refused. *Steinwender v. Creath*, 44 Mo. App. 356; *R. R. v. Stock Yards*, 120 Mo. 541.

The modification made by the court by inserting the words "open and visible to the world," "openly, publicly, and visibly," was proper. *Miller v. Northup*, 49 Mo. 397.

There was no error in the instructions given by the court of its own motion. 2 R. S. 1889, sec. 5117; *Kennedy v. Prewett*, 24 Mo. App. 415; *Hosli v. Yokel*, 58 *Id.* 169; *Kincaid v. Logue*, 7 Mo. 166. See, also, *Powell v. Davis*, 54 Mo. 315; *Bradley v. West*, 60 *Id.* 59; *Degraw v. Prior*, *Id.* 56; *Edwards v. Carey*, *Id.*

572; *Scott v. Allenbaugh,* 50 Mo. App. 130; *Meriwether v. Howe,* 48 *Id.* 148.

Possession by respondents and those under whom they claim, with title or color of title under deeds to the whole land, would give them possession of all accretions thereto, and this though the waters of the rivers had swept away every vestige of the original island. *St. Louis v. R'y,* 114 Mo. 13; *Cooley v. Golden,* 117 *Id.* 33; *Naylor v. Cox,* 114 *Id.* 232; *Perkins v. Adams,* 132 *Id.* 131.

All the evidence offered by respondents as to the ownership of Mobile island by George Schweigler and the subsequent acts of his heirs showing an intention to retain possession of it was admissible. *Fair Grounds v. Reinecke,* 21 Mo. App. 478; 2 R. S. 1889, secs. 8321–8323, and authorities heretofore cited.

BIGGS, J.—This is an action of forcible entry and detainer. It was commenced before a justice of the peace in St. Charles county on the tenth day of April, 1895, and was subsequently removed by *certiorari* to the circuit court of that county. The subject-matter of the controversy is a tract of land in St. Charles county. The land is known as "Mobile Island," and is situated at the confluence of the Mississippi and Missouri rivers. The complaint is that while the plaintiff was in the peaceable and actual possession of the land, to wit, on the twenty-sixth day of March, 1895, the defendants forcibly entered upon the land and took possession thereof by building a fence along the north line of the tract and extending from one river to the other. The defendants admitted that they built the fence, but denied that the plaintiff was in possession of the land at the date of the alleged ouster or at any other time. On the contrary they asserted that they and

their ancestor had been in the actual and peaceable possession of the land since 1866.

At the trial of the cause the evidence introduced by defendants tended to prove these facts: In the early part of the century Mobile island was surveyed and sectionized by the surveyor of the United States, as a part of St. Louis county. At that time the channel of the Missouri river was to the north and it formed the northern and eastern boundaries of the island. A slough separated the island from the main land in St. Louis county, and another slough separated it from "Hog island," which lay a little to the north. This was the condition of the land until 1869 or 1870. In 1865 George Schweigler, the father of defendants, and his brother, Andrew, bought the island from its then owners. They took immediate possession of it and commenced to improve it. In 1867 Andrew sold his interest to George. George lived on the land until 1876. During the time he cleared and put in cultivation over one hundred acres, planted out orchards, and built three dwelling houses. In 1869 or 1870, the channel of the Missouri river changed to the south, leaving Mobile and Hog islands on the St. Charles county side of the river. Immediately thereafter the channel began to encroach on Schweigler's farm and by 1876 the improved land and the houses were washed away. Schweigler left the island in the fall of 1876, and died in the city of St. Louis the following year. His children continued to live in St. Louis. After their father's death they continued to exercise acts of ownership over the land. In 1878 and 1879 they cut considerable cord wood on the land and shipped it to St. Louis. In 1880 and 1881, they paid the taxes and frequently visited the land for the purpose of warning off trespassers. In 1882 they leased it to a man by the name of Leslie, who built a shanty on it, cleared out a

garden patch and continued to live there until June, 1883, when he was compelled to move away on account of high water. In 1884 they contracted with the United States government to cut the willows off the land, which the government continued to do on a large scale until 1889. In 1890 they paid the taxes and frequently visited the land to warn off trespassers. In 1891 they made a contract with one Golike to cut willows, which Golike did and paid defendants therefor. In 1892 they leased the land to one Briscoe, who built a hut on the land and lived in it until the spring of 1894. In March, 1893, they leased the land to defendant Gerkin for the term of three years, the term to begin March, 1894. In February, 1894, Gerkin went upon the island, inclosed about three quarters of an acre with a wire fence, spaded up the ground and planted it in cucumbers. In the spring of 1894 the defendants had the land surveyed and the lines established, and in the following spring they built the fence along the north line. The evidence of the defendants also tended to prove that since the change in the channel of the river the great bulk of the original island had washed away, and that the land in controversy had been formed by accretions on the northern and eastern boundaries of the island, and that but little of the newly made land was fit for cultivation; that it was low and subject to overflow and was only valuable for the willows and young timber growing on it, and that Mobile island is separated from Hog island by a slough, which is from fifty to three hundred feet wide, through which the water from either river flows during a moderately high stage of water.

The evidence offered by plaintiff tended to prove these facts: In April, 1888, the plaintiff obtained a quitclaim deed to certain lands described as situate in "Missouri point in St. Charles county and state of Missouri, in township 47, ranges 7 and 8 east." The

boundaries of the land were given, and according to them Mobile island, Hog island, and a portion of what is known as Green island were conveyed. Green island is north of Hog island, and is separated from it by a slough. In the fall of 1888 the plaintiff built a wire fence along the northern boundary of the land described in his deed. The fence extended through the woods from one river to the other, and the wire was fastened to trees instead of posts. This fence, together with the two rivers, formed an inclosure of about twelve hundred acres of land. Subsequently the plaintiff used the land for pasturage, that is, he turned his horses and cattle into the inclosure, and when the water was not running through the slough the stock could and did go onto Mobile island. The plaintiff was in the habit of visiting the land during the grazing season for the purpose of salting his stock. He exercised no other act of ownership over Mobile island, except that he secured a lease of it from Gerkin after the latter had leased it from the defendants. The plaintiff cleared up and put in cultivation a small piece of land on the north side of Hog island, and he built several tenant houses on Green island. This is substantially the case as made by the evidence.

At the instance of the plaintiff the court properly instructed the jury as to the issues in the case, that is, that the plaintiff at the time of the alleged ouster must have been in the actual and peaceable possession of the land, and that the defendants entered therein against his will and ousted him from the possession thereof. At the instance of the plaintiff the court gave the following additional instructions:

"(3) And the court further instructs the jury that, if they find from the evidence that Cary Howff and wife and John Dow and wife, by deed dated April 4, 1888, conveyed to the plaintiff, Eli Keen, a large tract

of land including the land described in the complaint, and that the lands described in said deed forms one contiguous body of land, and further find that, about the year 1888 or 1889, the plaintiff, Eli Keen, under his said deed from Cary Howff and wife and John Dow and wife entered upon and took actual possession of a part of the land conveyed to him in said deed, using, cultivating and growing crops thereon, and that at the time the plaintiff took such actual possession of said land in 1888 or 1889 the land described in the complaint was wild, uncultivated and unoccupied, and covered with brush and timber, then the plaintiff was in actual, peaceable and exclusive possession of all the land embraced and described in his said deed from Cary Howff and wife and John Dow and wife, including the land described in the complaint and in dispute in this case.''

''And if the jury further find from the evidence that at all times since the plaintiff took such actual possession of a part of the land described in his said deed from Cary Howff and John Dow and wife, in 1888 or 1889, he has in person or by his tenants been in the actual possession of said lands, using, cultivating and growing crops thereon, then the plaintiff was in the actual, peaceable and exclusive possession of all the land embraced in his said deed, including the land described in the complaint, excepting only such parts thereof as other persons had taken possession of since 1888 or 1889, by actual inclosure or cultivation, and if the jury find the facts as stated above, then the fact that the heirs of George Schweigler, deceased, have paid taxes on the lands in dispute or a part thereof, and that the defendants, George Schweigler and Mike Schweigler, made contracts with one Golike for cutting willows or brush on said lands in the years 1891 and

1893, and received pay from said Golike for brush and willows cut thereon in the years 1891 and 1893, did not deprive plaintiff of his actual, peaceable and exclusive possession of said land or any part thereof."

"(9) The court further instructs the jury that, if it appear from the evidence that the plaintiff, Eli Keen, was in the actual, peaceable and exclusive possession of the lands in dispute, by means of his said fence, and using the same as a pasture for grazing horses and cattle, as defined in the preceding instructions, then the making of contracts, authorizing parties to cut brush on said lands and the payment of taxes thereon by the defendants, did not deprive the plaintiff of his actual, peaceable and exclusive possession of said lands, nor did such facts restore defendants to the possession thereof."

The court gave the following instructions for the defendants:

"*First.* The jury are instructed that the possession necessary to be shown by the plaintiff before the defendant can be convicted of the forcible entry and detainer charged, is a real *bona fide* possession and not a mere sham or nominal possession for the mere purpose of compelling the defendant to institute an action in ejectment by taking nominal possession merely. And to determine this question, the jury must take into consideration all the acts and declarations of plaintiff in regard to such possession as have been introduced in evidence."

"*Second.* The jury are instructed that, in order to recover in this action, plaintiff must show to the satisfaction of the jury, that he was in the actual, peaceable, and exclusive possession at the time of the alleged entry by defendants, and that a mere scrambling or interrupted possession is not sufficient."

"*Third.* The jury are instructed that, although they may believe from the evidence that the plaintiff had a fence constructed from the Mississippi river to the Missouri river, which with said two rivers served to enclose a tract of land of which the plaintiff was in peaceable and exclusive possession, and also served to inclose the premises described in plaintiff's complaint, yet this fact will not justify a verdict in his favor, unless he also shows that he held such peaceable and exclusive possession of the land described in plaintiff's complaint."

"*Fifth.* If the jury believe from the evidence that the defendants were at any time prior to the alleged forcible entry and detainer, in lawful, peaceable possession of the premises, then such possession is presumed to continue until the contrary is shown, and the burden of doing this rests upon the plaintiff, and unless he does so to the satisfaction of the jury, the verdict must be for the defendants."

"*Sixth.* The jury are instructed that the payment of taxes and having the land in question surveyed and thus ascertaining the lines, boundaries, and quantity thereof, and the cutting of timber and brush thereon, from time to time, and the putting of parties on the land for the purpose of protecting the same against trespassers and visiting of said lands from year to year by the owners thereof for the purpose of supervision and control up to the time of the alleged forcible entry and detainer so as to plainly indicate to the public that said lands were under the control and management of the defendants, then said acts are sufficient to constitute such possession by defendants, as will defeat plaintiff's action and the verdict must be for defendants."

The court gave the following instruction on its own motion:

"If the jury believe from the evidence that one George Schweigler was in the actual, peaceable and exclusive possession of island number one, commonly known as Mobile island, at the junction of the Mississippi and Missouri rivers, in the year 1865 or 1866, or about that time, or any portion of said island with claim of title under deeds to the whole thereof, and that the defendants succeeded to such possession and have since that time and up to the date of the alleged forcible entry and detainer, continued in such possession thereof, or the accretions thereto, and the jury further believe from the evidence that the premises described in plaintiff's complaint are a part of said island or its accretions, then the plaintiff can not recover and the verdict must be for the defendant."

"It is not necessary that a person should be and remain upon a tract of land at all times or actually inclose it by a fence in order for him to be in the actual and peaceable possession thereof, but what the law requires to constitute such possession, is that those acts or things should have been done upon the land and it subjected to such a use considering its condition and the purposes to which it might be applied, as would advise and notify the world, that some person was then engaged either in using or had been using said land with no appearance of an abandonment of such uses, for some purpose to which the land might be applied. When such facts are shown or can be reasonably and satisfactorily drawn from the evidence then a tract of land is as much in the actual occupancy of the one as as if he remained personally on the land at all times."

The jury returned a verdict for the defendants. The plaintiff has appealed. He complains of the action of the court in the admission and rejection of evidence; that the defendants' instructions and those given by the court of its own motion are erroneous, and that the

instructions asked by the plaintiff and refused by the court ought to have been given.

The plaintiff objected to all evidence offered by defendants as to the ownership of Mobile island by George Schweigler, his occupancy thereof,

FORCIBLE entry and detainer: admissibility of evidence of ownership.

the subsequent acts of his heirs indicating an intention to retain possession of it, and its location and situation both before and after the change in the channel of the Missouri river. We are of the opinion that the evidence was properly admitted. The claim that plaintiff was in the actual possession of Mobile island at the time of the alleged ouster must rest on one of the following grounds: *First*. That Green island, Hog island and Mobile island form a *contiguous* body of land, and that with the aid of the two rivers the plaintiff's wire fence along the north line constituted a complete inclosure of the entire land, and hence had the effect of putting the plaintiff in the actual possession of Mobile island, provided it was unoccupied. *Second*. That even though the islands were separate tracts, the actual possession and cultivation by plaintiff of portions of Green and Hog islands had the effect of extending such possession to Mobile island, if it was unoccupied by defendants. To determine whether the acts of the plaintiff in building his fence and in making the improvements on Green and Hog island had the effect which he claimed, it was essential that there should be an inquiry as to the original locations of the three islands, that is, whether they formed one contiguous body of land, and whether or not Mobile island was unoccupied at the time the plaintiff built his fence, or at the time he claims to have commenced the cultivation of a portion of Hog island. The plaintiff tried the case on this theory, as is clearly indicated by his

instructions. This disposes of all exceptions as to the evidence.

The plaintiff asked seven instructions, presenting, under various phases of the evidence, the effect of the building of the fence, and the use of the land lying south of the fence for grazing purposes. The court modified all of the instructions to the extent of requiring the jury to find that in order that such alleged use or occupancy should amount to an actual possession, it must have been "open and visible to the world." The modification we think was right. The evidence tended to show that the fence was built through thick timber, and was about one mile and a quarter north of the north line of Mobile island, and that the plaintiff's stock only went upon Mobile island when there was no water in the slough. To make this an actual occupancy of the island so as to authorize the present action, the intention to so occupy must have been manifested in some open and unequivocal way. The action of forcible entry and detainer ought not to be sustained on a stealthy or secret use or "a scrambling possession," as has been decided by this and the supreme court.

*FORCIBLE entry and detainer: possession necessary to maintain action.*

Plaintiff also insists that the various acts of the defendants in reference to said land (which acts are recited in the defendants' sixth instruction) were not sufficient in law to continue the possession once held by their father. To this we can not agree. As has been well said by the supreme court in *Leeper v. Baker* (68 Mo. *loc. cit.* 405), "the words 'actual occupancy' are themselves indefinite in their meaning, for although they are usually applied to a case of residence on the land, or to an occupation by fences or buildings, they are not necessarily restricted to such

marks of occupation, but may be applied to other acts of ownership which are known to the true owner." In *Draper v. Shoot*, 25 Mo. 203, it was held substantially that the erection of fences and houses was not indispensable in all cases to the actual occupancy of land, that much depends upon the nature and situation of the land and the uses to which it may be applied, and that when it is not susceptible of a definite occupation, that is for cultivation, any other act or acts of ownership which clearly and openly indicate a claim to the property is sufficient. And the court further held that the payment of taxes might be considered in connection with other acts of ownership in determining an intention to assert ownership and possession of land. In the case at bar the evidence tends to prove that the land was marshy and subject to overflow; that it was covered with a thick growth of willows and young timber, which constituted its chief value, and that it was not useful for farming purposes. Under these circumstances we think that the various acts of ownership which the evidence tends to show the defendants exercised, were sufficient to continue in them the actual possession held by their father at his death.

The instruction given by the court of its own motion announced the correct rule.

Complaint is made of the defendants' sixth instruction. Standing by itself the instruction is objectionable in several particulars. However, when it is considered in connection with other instructions we think it did no harm.

Other questions are presented and argued by counsel, but it is believed that what has been said fairly disposes of all of them adversely to plaintiff. The judgment will therefore be affirmed. All the judges concur.