# AT LAW AND IN CHANCERY

DETERMINED IN THE

## SUPREME COURT

OF

# COLORADO TERRITORY.

---

## PALMER *v.* COWDREY.

PRACTICE IN CHANCERY. The practice in chancery cases, and the manner of serving process and publishing notice of suit, is regulated by the law of the Territory, and not by the equity rules of United States courts.*

NOTICE BY PUBLICATION — *when sufficient.* Process should be personally served where the defendant is within the jurisdiction, and for that purpose the officer should hold the summons until the return day. A return *non inventus*, made before the return day, will not support a notice by publication.†

*Error to District Court, Arapahoe County.*

Messrs. BROWN & PUTNAM, for plaintiff in error.

Mr. H. R. HUNT, for defendant in error.

HALLETT, C. J. Defendant in error filed his bill in the Arapahoe district court, on the 25th day of February, A. D. 1868, and the summons was made returnable to the

---

* See *Hornbuckle* v. *Toombs*, 18 Wall. 648, a later case, in which this doctrine is fully established.

† The same rule was applied in *Wise* v. *Brocker*, decided at this term.

ensuing May term of the court. Notice of the pendency of the suit was published in a newspaper as provided in section 8 of the act relating to chancery practice (R. S. 93), and on the 30th day of March, and more than a month before the return day, the summons was returned *non inventus.* Plaintiff in error, failing to appear at the May term of the court, the bill was taken as confessed by her and a decree of foreclosure was passed. In this decree it was provided, that if the amount obtained upon the sale of the mortgage premises should be insufficient to pay the amount found to be due to defendant in error, the master should report the deficiency to the court, and, upon confirmation of the report, that execution should be issued for the sum so found to be due and unpaid. As the summons was not served upon plaintiff in error, and there was no appearance by her in the court below, we are first to consider whether the method pursued to bring her into court was effectual to that end. It is contended that the practice in chancery is regulated by the equity rules of the courts of the United States, according to which service by publication of notice cannot be made, and that the legislative assembly is without authority in the premises. This proposition rests upon the authority of *Orchard* v. *Hughes,* 1 Wall. 73, which originated in a district court of the late territory of Nebraska, and, like the case at bar, was a bill to foreclose a mortgage. In that case the district court awarded execution for the balance due after the sale of the mortgage premises; a proceeding not warranted by the general practice of courts of equity, and for which there was then no authority in the equity rules prescribed by the supreme court. In *Noonan* v. *Lee,* 2 Black, 499, it had been previously decided that without a rule of court to authorize it, a district court of the United States had no power to direct payment of the balance remaining unsatisfied after the sale of the mortgaged premises, and it was held, that the same practice should govern the district court of Nebraska territory. After *Orchard* v. *Hughes* was decided, and at the same term of court, a rule was adopted obviously for the purpose of conferring upon circuit and

territorial courts, the authority that had been denied to them
in the cases mentioned. It has been suggested, that *Orchard*
v. *Hughes* was a case in which the court had jurisdiction
under the laws of the United States, and that the practice
of United States courts was, for that reason, applied ; *Stacy*
v. *Abbott*, 1 Am. L. T. 84 ; but there is nothing in the opinion
of the court, or in the reporter's notes, to indicate that such
was the fact, or that the court intended to limit the applica-
tion of the rule to any class of cases. In the recent case of
*Clinton* v. *Englebrecht*, 13 Wall. 434, it was said, that
*Orchard* v. *Hughes* was decided upon the ground, that the
chancery jurisdiction conferred upon territorial courts was
beyond the reach of territorial legislation, and this seems
to identify the case with the principle established in *Dun-
phy* v. *Kleinsmith*, 11 Wall. 610. In the case last mentioned
it was held, that the chancery jurisdiction, conferred by con-
gress upon a district court of the territory of Montana, could
not be divested by the legislative assembly of the territory,
and that in a cause of equitable jurisdiction the statute of
the territory conferred upon the court no power to proceed
to trial by jury, and judgment according to the course of
practice in courts of law. In this, nothing more is affirmed
than that the chancery and common-law jurisdictions of
territorial courts must be separately maintained ; a proposi-
tion for which there is direct authority in the organic acts
of the several territories. In these acts it is declared that the
courts "shall possess chancery as well as common-law juris-
diction," and this provision undoubtedly requires that the
general distinction between courts of law and of chancery
shall be maintained, so far at least as to prevent the transfer
of causes from one forum to the other. To remove a cause
from the equity to the common-law side of the court, or to ef-
fect that result by providing that all issues of fact shall be
tried by jury, would be to remove the cause to another forum
and to abolish chancery jurisdiction, which is established by
the organic act. Therefore, it cannot be doubted that the
chancery jurisdiction of territorial courts is beyond the
reach of territorial legislation, but I do not perceive that the

organic act extends beyond this point. In another clause it is provided that the jurisdiction of the several courts, both appellate and original, and of justices of the peace, shall be as limited by law, and this is followed by certain limitations upon the jurisdiction of justices of the peace, and probate courts, not material to our present inquiry. The law here referred to, which shall further define the jurisdiction of the courts, is unquestionably the law of the territory, so that, if we read this clause in connection with that first mentioned, we find that the legislative assembly is authorized to define and establish the jurisdiction of the courts, subject to the restriction that the distinction between common-law and chancery proceedings must be respected. In addition to the clause referred to, by which power to regulate the jurisdiction of district courts is expressly conferred upon the legislative assembly, subject to the limitation respecting chancery and common-law proceedings, the power of the legislative assembly is extended to all rightful subjects of legislation, consistent with the constitution of the United States and the provisions of the act. It will not be contended that the practice of the courts, at law and in chancery, is not a rightful subject of legislation, so that, as to jurisdiction and practice, we have full authority in the legislative assembly, with the single restriction that the chancery and common-law jurisdiction shall be separately maintained. There are, indeed, other provisions relating to writs of error and appeals, and the jurisdiction of justices of the peace and probate courts, which are to be regarded as limitations upon the powers of the legislative assembly, but they do not affect the present inquiry, and therefore need not be noticed in this connection. Nor is it necessary to the decision of this cause that the effect of the clause respecting chancery and common-law jurisdiction as a limitation of the power of the legislative assembly, should be considered ; the powers which the court below was asked to exert were such as are usually conferred upon courts of equity. Accepting the organic act as the charter of our government, we find that the jurisdiction and practice of

the courts of the territory are to be regulated by the terri-
torial assembly, maintaining the distinction between chan-
cery and common-law proceedings. Accordingly, it was
held in *Clinton* v. *Englebrecht, supra,* under the Utah act,
which, in this respect, is like our own, that the method of
procuring jurors for the trial of cases was a rightful subject
of legislation, and that the whole matter of selecting, sum-
moning and impaneling jurors was left to the territorial
legislature. This case establishes the principle, clearly de-
ducible from the organic act, that the jurisdiction and
practice of the courts of the territory may be defined and
regulated by the legislative assembly, subject to the limita-
tions contained in the act. And this construction appears
to have been accepted without question in some of the early
territories. *Rogers* v. *Bradford,* Pinn. (Wis.) 418 ; *Lor-
rimer* v. *Bank of Illinois,* Mor. (Iowa) 223. With humil-
ity I confess that I am unable to harmonize the decision in
*Orchard* v. *Hughes* with this principle. That was a chan-
cery case, while *Clinton* v. *Englebrecht* was at law; but I
submit that the power of the legislative assembly is the
same in chancery as at law. As we have seen, the legisla-
tive assembly is equally bound to maintain the chancery
and common-law jurisdiction, and within these limits the
powers of that body are plenary. The language of the
organic act applies with equal force to both jurisdictions.
When it is said that the jurisdiction of the courts, both
appellate and original, shall be as limited by law, this must
mean the jurisdiction in chancery as well as at law; and if
the practice at law is a rightful subject of legislation, where
shall we find authority for saying that the practice in chan-
cery is not equally such? When this subject shall be
brought before the supreme court again, the logical force
of the decision in *Clinton* v. *Englebrecht* will, I think, lead
to the overthrow of the doctrine of *Orchard* v. *Hughes,*
and therefore I am content to adhere to the practice long
established in this territory by the act of assembly. To
overturn this practice at the present time would greatly
disturb vested rights, and this should not be done, un-

less it clearly appears that the act is not supported by
the organic law. In this discussion I have purposely
refrained from entering into the question of the juris-
diction of district courts when sitting for the trial of causes
arising under the constitution and laws of the United
States. This being a case under the laws of the territory,
what is here said should not be extended beyond the class
to which the case belongs. The attempt of defendant
in error to obtain service by publication of notice was
rightly directed, but he failed to secure full compliance
with statute. In section 8 of the chancery act (Rev. Stat. 94),
which provides for publishing notice of the pendency of the
suit, it is declared that this proceeding (the publication of
the notice) shall not dispense with the usual exertion on
the part of the sheriff to serve the summons. The law in-
tends that service of the summons shall be made on the
defendant, if he can be found within the jurisdiction during
the life of the writ. If the defendant is not in the county
at the time the summons is placed in the hands of the offi-
cer, he may come into the county before the return day,
and if notice by publication has been given, it is neverthe-
less the duty of the officer to serve the summons, if he can
find the defendant in his bailiwick. To the performance
of this duty it is necessary that the officer should retain the
summons in his hands until the return day; for after return
of *non inventus* of course the officer cannot obey the com-
mand of the writ. In the present case the sheriff returned
the summons more than one month before the return day,
and thereafter he could not comply with the statute by
making the usual exertion to serve it. Whether the
defendant came into the county after the return and during
the life of the writ, we do not know, nor can we be informed
except by the return of the proper officer. By the return,
as it stands in the record, it does not appear that service
could not have been made during the life of the writ, and
the court had no authority to proceed upon notice by pub-
lication without such evidence. For this cause the decree

must be reversed, with costs, and the cause remanded for further proceedings.

BELFORD, J.   While I fully concur in the opinion of the chief-justice, I deem it my duty to say that, in my judgment, the power of the territorial legislature over the legal and chancery practice of the district courts is full, ample and complete.   It has been repeatedly held by the supreme court of the United States that a territorial legislature, acting under its general delegation of power given in its organic act, can legislate on all subjects which fall within the domain of rightful legislation.   The mode of procedure in courts of justice is certainly a rightful subject of legislation.   *Sparrow* v. *Strong*, 3 Wall. 104 ; *Rogers* v. *Burlington*, id. 662.

WELLS, J.   I concur in all that has been said by the chief-justice, except so far as relates to the case of *Dunphy* v. *Kleinsmith*, and I agree that the doctrine of that case is here correctly interpreted ; but it appears to me that it is sought to justify the doctrine of that case upon principle, which, with submission, I conceive to be unnecessary, and perhaps scarcely appropriate.   It is sufficient, I conceive, to yield to the authority of the court of final resort without going further.

*Reversed.*