HIMMELBERGER-HARRISON LUMBER COM-
PANY, Appellant, v. SQUIRE L. McCABE and
JOHN M. SALLEE.

Division Two, May 18, 1909.

1. SHERIFF'S RETURN: Premature: Order of Publication. A
writ of summons issued to a sheriff of another county, is re-
turnable on the first day of the next term of the court out of
which it is issued, if the term begins fifteen days thereafter,
and in such case it is the duty of the sheriff to hold it until the
first day of said term, if defendant is not sooner found. Where
the writ has by law a fixed return day, it should not be re-
turned before that day, unless defendant is sooner found. So
that where the summons was issued out of the circuit court
of Stoddard county on July 18th, to the sheriff of Gentry county,
and returned by him "not found" on July 25th, and the next
term began according to law on the second Monday in Sep-
tember, the writ was prematurely returned, and furnished no
basis for an order of publication. The law as to the return of
writs of summons is the same as the law as to the return of
writs of execution.

2. ———: ———: ———: Presumption That Officer Did
Duty: Contradicted By Return. Where the law required the
sheriff's return of the writ of summons to be made on the
second Monday of September, it will not be presumed that he
did his duty and retained the writ until that time, where his
return shows on its face that it was returned on July 25th. If
upon the face of the return it does not appear that personal ser-
vice could not have been obtained during the life of the writ, the
court has no authority to proceed to order notice by publication.
If on its face it shows that it was retained by the sheriff until
the return day as fixed by statute and that personal service
could not be had, then the court, guided by the *non est* return
alone, or by it and such other evidence as may be pertinent,
may determine as a fact that defendant could not be found and
make an order that he be notified by publication.

3. LIMITATIONS: Void Tax Deed: Acts of Adverse Possession.
Where the tax deed under which plaintiff claims was void, the
payment of taxes upon land unfit for cultivation or agricultural
purposes, annual visits to it, the cutting of such timber as it
was profitable to remove for lumber and other purposes, the
making of log roads through it, and the prosecution of trespas-
sers thereon, for a period of ten years, do not constitute that

open, notorious and visible adverse possession that will deprive the true owner of the land. They at most constitute acts of ownership, and not adverse possession.

4. **LACHES: Adverse Posession: Not Applicable.** Where no substantial improvements were made on the land, and plaintiff, believing he had the title under a tax deed which is adjudged to be void, paid the taxes, and at various times, as the needs of his mills required, removed the timber, there is nothing in the circumstances that makes the doctrine of laches applicable to the case.

Appeal from Stoddard Circuit Court.—*Hon. J. L. Fort,*
Judge.

AFFIRMED.

*Oliver & Oliver* and *Wammack & Welborn* for appellant.

(1) The trial court committed reversible error in holding that the circuit court of Stoddard county was deprived of jurisdiction and power to make the order of publication, because the sheriff of Gentry county dated his return of *non est* on the 25th day of July, 1890, instead of the first day of September term, 1890, of the circuit court of Stoddard county, to which it was returnable. We insist that the sufficiency of the sheriff's return, and when it was in fact made, and when the summons was in fact returned into the circuit court, were all questions which the circuit court of Stoddard county had before it at the time that it judicially determined that an order of publication was necessary to bring in the defendant. We further insist that all these facts were affirmatively and judicially passed upon by the circuit court at the time that it made the order of publication. We further insist that under Sec. 577, R. S. 1899, it is not the date of the sheriff's return nor the time when the summons is again returned to the clerk, but it is the fact that the defendant named in the summons cannot be found by the sheriff, that enables the court to make

an investigation as to whether or not an order of publication should be made or a new summons should issue. Section 672 provides that no judgment shall be stayed, impaired or in any way affected by reason of "any imperfect or insufficient return of any sheriff or other officer." Voorhees v. Jackson, 10 Pet. 499; R. S. 1899, secs. 7303, 567, 573, 575, 1601, 672 and 577; State ex rel. v. Finn, 11 Mo. App. 408; State ex rel. v. Finn, 87 Mo. 314; Cummings v. Brown, 181 Mo. 711; 1 Black on Judgments, sec. 270, p. 327; Lawson on Presumptive Evidence, p. 27; Com. v. Gill, 14 B. Mon. 20. (2) Moreover, the law does not require a vain and useless act or thing to be done. In this instance the sheriff made search for McCabe on the 25th of July, 1890, and could not find him. Evidently he continued the search and at some later period, made the further notation on the summons, "This man lives in Harrison county, Missouri." To hold this summons under such circumstances until the first day of the September term of the Stoddard County Court would be a useless thing. The statute makes it the duty of the sheriff to have the summons in court on the return day, but does not forbid its earlier return. If the jurisdiction of our circuit courts, in bringing in non-resident and unknown defendants, is made to depend upon the day on which a "*non est* return" is to be made on a summons, it will require a different date and a careful calculation of distances and of the postal facilities for the different sheriffs in the different counties of this State to make returns on summons, in order to confer jurisdiction upon a particular circuit court, authorizing it to notify unknown and non-resident defendants by publication. With all deference to the learned trial judge, who presided in this case, and with all deference to the judge who wrote the opinion of Cummings vs. Brown, 181 Mo. 711, we respectfully insist that such a ruling, if adhered to, would unsettle the title to thousands of homes and overturn

the rule that has heretofore prevailed with reference to the presumption and effect of judgments and decrees of courts of general jurisdiction in this State. We therefore ask the court to modify or overrule so much of the Cummings case as attempts to establish the rule that the circuit court's jurisdiction is limited or prescribed in making an order of publication by the time that the sheriff dates his return, and not by the return of *non est*. State ex rel. v. Finn, 87 Mo. 314; Com. v. Gill, 14 B. Mon. 20; Cummings v. Brown, 181 Mo. 711; Johnson v. Long, 72 Mo. 210; Lenox v. Clark, 52 Mo. 115; R. S. 1899, secs. 567, 573, 575, 577; Lawson on Presumptive Evidence, pp. 27-34; Castleman v. Relfe, 50 Mo. 583. (3) The sheriff's return that McCabe could not be found in Gentry county is conclusive and binding as against Sallee in this proceeding, and he cannot attack in this collateral way the judgment of the circuit court of Stoddard county. McCabe may have a cause of action against the sheriff of Gentry county if the sheriff made a false return, but he cannot raise that question here, or show that the return was false. Schmidt v. Niemeyer, 100 Mo. 209; Smoot v. Judd, 184 Mo. 508; Reiger v. Mullens, 109 S. W. 26; Jones v. Driskill, 94 Mo. 190; State ex rel. v. Finn, 87 Mo. 314. A sheriff's deed for taxes is prima-facie evidence of title. R. S. 1899, sec. 9203; R. S. 1889, sec. 7684; R. S. 1879, sec. 2392. (4) There is nothing in this record showing when the sheriff returned the summons in the tax suit. For all this court knows, and for all the trial court knew, it may have been returned on the first day of the September term of the circuit court of Stoddard county. In the absence of testimony to the contrary the presumption ought to be indulged in that it was rightfully and not wrongfully returned. The maxim *omnia praesumuntur rite esse acta* is applicable here. Johnson v. Long, 72 Mo. 210; State v. Brown, 75 Mo. 317; Lawson on Presumptive Ev., p. 34; Brackenridge v. Dawson, 7 Ind. 383.

But if the summons was prematurely returned, it was only an irregularity, and in no just or legal way prevented the circuit court of Stoddard county from proceeding with the tax suit before it. Glover v. Rawson, 3 Chand. (Wis.) 249, 3 Pin. (Wis.) 226. The statute does not contemplate that the sheriff shall make a search in the nature of a tour throughout the entire county before the court is authorized to make an order of publication. Horton v. Monroe, 98 Mich. 195; Horton v. Brown, 45 Ill. App. 173. (5) The Statute of Limitations vests in the appellant a perfect title to this land. Fitch v. Gosser, 54 Mo. 267. (6) A party, under color of title, may take such possession of a tract of land as it is susceptible of; regard being had to the nature and situation of the land and the uses to which it can be put; if it is timbered land, and bought for that purpose the claimant may take possession of it by cutting fire wood from it, by taking saw logs from it, by erecting buildings on it, or by doing any other visible and notorious act that indicates a claim of ownership over it that is so potential and patent and notorious that the owner of the paper title cannot be deceived as to purpose and intent of the party claiming the land and doing these things. Such possession has been held, by the court, to be adverse possession; a title thus acquired by such notorious acts of ownership has been held sufficient by this court to maintain trespass or forcible entry and detainer, and support actions of ejectment, and, in short, to defeat the claim of the party holding the paper title to such land. Draper v. Shoot, 25 Mo. 203; Fitch v. Gosser, 54 Mo. 267; Ware v. Johnson, 55 Mo. 504; Leeper v. Baker, 68 Mo. 405; Ozark Plateau Land Co. v. Hays, 105 Mo. 152; Benne v. Miller, 149 Mo. 237; Ewing v. Burnet, 11 Pet. 52; Holtzman v. Douglas, 168 U. S. 284; Chapman v. Templeton, 53 Mo. 463. Possession of part of a tract, under color of title, is possession of the whole. R. S. 1899, sec.

4226; Draper v. Shoot, 25 Mo. 203; Heinemann v. Bennett, 144 Mo. 113; Goltermann v. Schiermyer, 125 Mo. 301. (7) The laches and conduct of this respondent ought to defeat him. He has stood by and seen the purchaser at the tax sale in 1891 pay all the taxes that have been assessed against this land, without complaint or an effort on his part to have them assessed against him. He has stood by and seen the purchaser at that sale convey these lands to innocent parties, without a word of complaint. He has seen appellant and its grantor inaugurate schemes for the reclamation and improvement of this land. He has stood by and seen this appellant and its grantor institute suits, ordinary and extraordinary, for the protection of the timber standing on this land and for the protection of the title to it. He has stood by and seen this appellant and its grantor institute legal proceedings for the removal of a cloud on the title to this land that was so serious as to depress and almost destroy the value in these lands. He has stood by and seen appellant and its grantors inaugurate a scheme for the reclamation of these wet lands until the market price of the lands has advanced from a few cents per acre to many dollars per acre at the present time. Naddo v. Bardon, 2 U. S. C. C. A. 335; Turner v. Burke, 99 S. W. 76.

*J. M. Sallee* and *J. W. Peery* for respondents.

(1) Under Sec. 577, R. S. 1899, without a *non est* return, the court has no power to make an order of publication. State ex rel. v. Finn, 87 Mo. 315; Harness v. Cravens, 126 Mo. 247; State ex rel. v. Horrine, 63 Mo. App. 7. (2) The statute means a valid and legal *non est* return. Cummings v. Brown, 181 Mo. 711. A return of a writ, not executed, before the return day, is void and invalid. Dillon v. Rash, 27 Mo. 243; Norton v. Quamby, 25 Mo. 388; Reed v. Low, 163 Mo.

519; Littlefield v. Ramsey, 181 Mo. 613; Gurney v. Moore, 131 Mo. 664; Huhn v. Lang, 122 Mo. 600; Marks v. Hardy, 86 Mo. 232; Rollins v. McIntire, 87 Mo. 496; Johnson v. Lattu, 84 Mo. 139; Cummings v. Brown, 181 Mo. 711. (3) This order of publication is also void upon its face because it fails to recite the jurisdictional fact, that a summons had been issued and regularly returned for the defendant McCabe. It must be remembered that the section of the statute which we are now considering applies only to resident defendants who cannot be served. Before the court has any power to make an order of publication under that section, a summons must have been issued and regularly returned *non est*. This is a jurisdictional fact, and it should be recited in the order. State ex rel. v. Finn, 87 Mo. 315; Harness v. Cravens, 126 Mo. 247; State ex rel. v. Horine, 63 Mo. App. 7; Tooker v. Leake, 146 Mo. 434. (4) Before a judgment rendered upon notice by publication will be sustained, it must be shown that the statute was strictly complied with. Land & Mining Co. v. Land & Cattle Co., 187 Mo. 435; Evarts v. Lumber & Min. Co., 193 Mo. 449. (5) There was no evidence of adverse possession in the plaintiff, such as the law requires in order to vest the title by limitation. The only claim made by the plaintiff was that it had cut timber from the land and had had its employees look after it, and kept other people from taking timber therefrom and paid taxes thereon. Such acts of ownership are wholly insufficient to constitute adverse possession, under the rule which has been laid down in this State for many years. Nye v. Alfter, 127 Mo. 529; Crain v. Peterman, 200 Mo. 295; Morgan v. Pott, 124 Mo. App. 371; Pharis v. Jones, 122 Mo. 125. (6) Much is said in the brief of learned counsel for the appellant with regard to the laches of the defendants in failing to have earlier asserted their claim to this land. And much is said about the inequity of permitting them to recover it without the repayment of

the taxes paid by the plaintiff since its purchase in 1891. The evidence in this case shows that the land was wild and unimproved and not in the actual possession of any person. Under such circumstances it has been repeatedly held by this court that neither the doctrine of laches nor the Statute of Limitations can be invoked as against the true owner; and also that it is not necessary for him to make a tender of the taxes under the Act of 1903. Weir v. Lumber Co., 186 Mo. 388; Manwaring v. Lumber Co., 200 Mo. 718; Haarstick v. Gabriel, 200 Mo. 237.

FOX, J.—This suit was instituted in Stoddard county, Missouri, on the 13th day of January, 1905. It is brought upon the provisions of section 650, Revised Statutes 1899.

It was sought by this proceeding on the part of the plaintiff to ascertain and determine the title to four hundred acres of land, described in the petition as the south half of the southwest quarter and the east half of section 12, township 26, range 12 east, situate in the county of Stoddard and State of Missouri. The suit was originally brought against defendant Squire L. McCabe, but on the 15th day of January, 1906, John M. Sallee was made defendant upon his own motion, by reason of being purchaser from Squire L. McCabe, and filed an answer to the petition. The petition alleged ownership of the land and further alleged actual, open, notorious, continuous, adverse possession for more than ten years, and averred that during all that time it and its grantors exercised all the acts of ownership over said land to which it was susceptible, under a bona fide claim of title.

Defendant Sallee denied in his answer ownership of the land by the plaintiff. Sallee averred ownership of the land in himself as purchaser of the same on

February 21, 1905, from Squire L. McCabe and wife by good and sufficient deed. It was also alleged in the answer that plaintiff claimed title to the land in controversy by virtue of a sheriff's deed executed on the 16th day of September, 1891, by one John R. Barham, sheriff of Stoddard county, to Isaac and John H. Himmelberger. Then follows the averment in the answer that said sheriff's deed was made and executed in pursuance of an execution issued upon an illegal judgment of the circuit court of Stoddard county, rendered on the 7th day of March, 1891, in favor of Joseph Howell, collector of the revenue of said county, and against Squire L. McCabe, for certain delinquent taxes. Finally it is alleged in the answer that no legal or valid judgment was in fact rendered or entered by said court in said cause; that said circuit court had no jurisdiction or power to enter or render any judgment in said suit because there was no legal or valid order of publication notifying the said McCabe of the pendency of said suit, and that said court had no jurisdiction or power to make the order of publication therein, and that the judgment, execution sale and sheriff's deed under such judgment were each and all void and of no effect.

The replication of plaintiff consisted of a denial of each and every allegation of the matter set up in the answer.

Upon the trial it was admitted that Squire L. McCabe was the common source of title, and that he was the record owner of this land on the 18th day of April, 1883, and that his deed was recorded in the recorder's office of Stoddard county. The deed recited the residence of McCabe as Gentry county, Missouri.

Plaintiff offered in evidence the sheriff's deed from J. R. Barham, sheriff of Stoddard county, to Isaac and John H. Himmelberger, dated September 16, 1891, filed for record October 2, 1891, and recorded in book 2, page 8, conveying the lands in controversy. There

is no necessity for reproducing this sheriff's deed in this statement. It is concededly in regular form, and recites all the statutory essentials as required by the statute, and is properly acknowledged and dated September 16, 1891.

There seems to be no controversy about the other conveyances offered by the plaintiff. It is sufficient to simply state that numerous other conveyances were offered by the plaintiff showing a regular chain of title from the purchaser at the sheriff's sale to the present plaintiff in this case.

There was then oral testimony offered by the plaintiff tending to show the nature and character of the acts of ownership exercised over the lands in controversy by the plaintiff and its grantors subsequent to the execution and delivery of the sheriff's deed. This testimony tended to show that these lands were unfit for cultivation or for agricultural purposes of any kind at the time they were purchased in 1891 by appellant's grantor, and that they are still unfit for agricultural purposes until drained and reclaimed. The testimony further tended to show that these lands were purchased chiefly for the standing timber upon them and to supply the sawmills owned by the appellant and its grantors. The testimony further tended to show that the plaintiff and its grantors annually visited said lands and cut from them such timber as it was profitable to remove, and protected the remaining timber from those who were inclined to trespass upon it.

The defendants, for the purpose of destroying the legal force and effect of the sheriff's deed upon which the plaintiff must rely for its paper title to this land, offered testimony as follows:

First, the petition in the tax case of the State of Missouri at the relation of Joseph Howell, collector of the revenue of Stoddard county, vs. Squire L. McCabe, in the circuit court of Stoddard county, filed on

the 10th day of February, 1890, with the exhibits and indorsements.

Second, the original summons that was issued in that case, bearing date July 18, 1890, directed to the sheriff of Gentry county, and made returnable on the first day of the next term of the Stoddard Circuit Court, to-wit, on the second Monday in September, 1890, together with the sheriff's return and indorsement made on said summons.  The sheriff's return is as follows:

"Executed the within writ in the county of Gentry, on the 25th day of July, 1890, by searching for within named Squire L. McCabe and he not being found in this county.

W. S. JENNINGS,
"Sheriff of Gentry County, Mo."

"*Non est.*

"Fees, 50c.

On this summons in the same handwriting is written the following further indorsement:  "This man lives in Harrison county, Missouri."

Third, the order of publication made in said cause on November 22, 1890, it being the twelfth day of the September term of said court, as the same appears in record "N," pages 270 and 271, of the circuit court of said county.  This order of publication is set out in full in the abstract.  Its opening sentence is as follows:  "Now comes the plaintiff by his attorney and it appearing to the satisfaction of the court that the defendant herein cannot be served with summons, it is ordered by the court that publication be made notifying defendant that an action has been commenced against him in this court," etc.

Fourth, the proof of publication made in said cause.

Fifth, the entry of the circuit court of Stoddard county, showing the entering up of the final judgment against the defendant on March 7, 1891, for the taxes then due against this land.

Sixth, a quitclaim deed from Squire L. McCabe and wife to John M. Sallee, dated February 21, 1905, recorded March 3, 1905, in book 35, page 520, conveying the land described in this suit.

To this last offering the appellant objected for the reason that at the time of the execution of the deed the title of Squire L. McCabe had passed out of him by the tax proceedings and by mesne conveyances into the plaintiff, and that McCabe had nothing to convey, and that Sallee took nothing by the deed. This deed was admitted subject to the objection.

The appellant asked the court to declare the law to be that the tax deed offered in evidence by the plaintiff passed the title out of the common source of title and into the purchaser at the tax sale and that by mesne conveyances the plaintiff had acquired that title. This declaration of law was refused by the court, to which action the plaintiff then excepted.

At the close of the evidence the cause was submitted to the court and its finding was in favor of the defendants, and a judgment and decree was entered of record in accordance with such finding.

A timely motion for new trial was filed and by the court taken up and overruled. From the judgment and decree rendered in this cause the plaintiff prosecuted this appeal, and the record is now before us for consideration.

## OPINION.

The first and controlling proposition which confronts us as disclosed by the record in this cause is whether or not the judgment rendered in the tax proceeding begun in Stoddard county, Missouri, on the

10th day of February, 1890, by Joseph Howell, collector of the revenue of Stoddard county, against Squire L. McCabe, was a valid judgment. Plaintiff's as well as defendant's paper title rests upon the validity or non-validity of the judgment in that tax proceeding.

The record discloses that the judgment in that tax proceeding was rendered upon constructive service. In other words, was rendered upon an order of publication made and entered by the court in term time on the 22d day of November, 1890, and the legal proposition with which we are now dealing concerning the validity of the judgment rests within the narrow limits as to whether or not the circuit court of Stoddard county had the legal right and power to make and enter the order of publication as heretofore stated. The facts as applicable to this proposition are undisputed. The record discloses that a summons was issued in said tax suit on the 18th day of July, 1890, directed to the sheriff of Gentry county, and that the summons was returned on July 25, 1890, by a return in the following words:

"Executed the within writ in the county of Gentry, on the 25th day of July, 1890, by searching for within named Squire L. McCabe, and he not being found in this county.     W. S. JENNINGS,

"Sheriff of Gentry County, Mo."

This summons was made returnable to the September term, 1890, of the Stoddard Circuit Court, which convened on the second Monday of September. Upon the 22d of November, 1890, it being, as recited in the abstract, the twelfth day of the September term of said court, the court, with the return as heretofore made by the sheriff before it, issued the order of publication, which recites: "Now comes the plaintiff by his attorney and it appearing to the satisfaction of the court that the defendant herein cannot be served

with summons, it is ordered by the court that publication be made notifying defendant that an action has been commenced against him in this court," etc. Upon this state of the record, as applicable to the proposition now under consideration, the contentions of the parties to this litigation may thus be briefly stated:

On the part of the appellant it is insisted that the return of the sheriff, together with the finding of the court that process could not be served upon the defendant, furnishes full support to the validity of the order of publication issued in that proceeding. On the other hand the respondents insist that the return of the sheriff was premature and illegal and was insufficient to furnish any basis for the action of the court in issuing the order of publication in said cause.

## I.

Section 575, Revised Statutes 1899, provides that in a certain class of actions if the petition alleges the defendant's non-residence, or that an affidavit is filed with the petition averring the defendant's non-residence or that he cannot be served by summons, the court or the clerk in vacation may make an order of publication notifying the defendant of the pendency of the suit.

Section 577, which is the section under which the order of publication in the tax suit now under consideration was issued, provides: "When, in any of the cases contained in section 575, summons shall be issued against any defendant, and the sheriff to whom it is directed shall make return that the defendant or defendants cannot be found, the court, being first satisfied that process cannot be served, shall make an order as required in said section."

Section 567 provides that "every such original writ shall be dated on the day it is issued, and made returnable on the first day of the next term there-

after; but if the first day of such term shall be within fifteen days thereafter, then such writ shall be made returnable upon the first day of the second term, and such writ, when issued, shall, together with a copy of the petition, be delivered to the officer charged with the execution thereof."

Directing our attention to the summons and return by the sheriff, manifestly it was the duty of the sheriff to retain such summons until the return day as designated in the writ, to the end that if at any time during the life of the writ the defendant was found he could have been served. The law which clearly made it the duty of the sheriff to retain the writ, in our opinion, is well settled.

Learned counsel for appellant insists that there is a marked distinction as to the application of legal principles to writs of summons and writs of execution. We are unable to agree with counsel upon that contention. We see no valid legal reason why the same principles should not be applicable to both writs. The provisions of the statute make no distinction. The statute provides that a writ of summons shall be dated upon the date of its issue and shall be made returnable at the next term of the court. The statute in relation to executions fixes the date and provides that it shall be made returnable at a specified time.

In Marks v. Hardy, 86 Mo. 232, it was insisted that an execution might be returned prior to the time designated in the writ, and plaintiff in that case insisted that that was the proper view. Judge BLACK, however, in responding to that contention, said: "Authorities may be found to support the plaintiff's view in this case, but the better doctrine is that when the execution by law has a fixed return day, it should not be returned before that day. [Schermerhorn v. Conner, 41 Mich. 374; Adams v. Cummiskey, 4 Cush. 420; Roberts v. Knight, 48 Me. 171.] This is in accord with prior rulings of this court, from which we are

not disposed to depart. [Dillon v. Rash, 27 Mo. 243.] To give sanction to any other practice is to disregard the forms and substance of the law and lead to unnecessary complication in the strife of creditors to acquire a priority.''

In Dillon v. Rash, 27 Mo. l. c. 244, Judge SCOTT, in discussing this subject, used this language: ''Regularly, an execution cannot be returned before the return day. If search is made and no property is found, it does not follow but that the defendant may have the property before the return day of the execution. He may acquire it after the return is made.''

Counsel for appellant quote from the opinion in Dillon v. Rash, where it was said by the learned judge writing that opinion, that ''it is well known that the periods between the date and return of executions in justices' courts were fixed with a view to give defendants a little time to prepare for their payment.''

From this it is insisted by counsel that the same reason does not apply to original writs of summons, and the same strictness as to returns is not required. Manifestly the law contemplates that if personal service is sought by the issuance of a writ of summons, made returnable on the first day of the next regular term of court, that the sheriff, during the life of that writ, will, with reasonable diligence, undertake to secure such personal service. However, if the writ is prematurely returned, indorsing his execution of the writ long before the return day that he has been unable after diligent search to find defendant, it does not necessarily follow that the defendant could not be found subsequent to his return and before the expiration of the life of such writ. As was said by Judge SCOTT in Dillon v. Rash, supra, ''if search is made and no property is found, it does not follow but that the defendant may have property before the return day of the execution. He may acquire it after the return is made.'' The same principle is applicable

to writs of summons. The defendant may be found after the return of the writ and before the expiration of the life of it, as designated within the writ itself. As was ruled in Marks v. Hardy, supra, "the better doctrine is that when the execution by law has a fixed return day, it should not be returned before that day."

In Cummings v. Brown, 181 Mo. 711, it was expressly ruled, as applicable to writs of summons, that from the time it comes into the hands of the sheriff to the day of the return named in the writ it is his duty to use reasonable diligence to serve it, and that a return by the sheriff certifying the fact that the defendant, after diligent search, cannot be found in my county and a return before the return day, is an illegal return. The conclusions reached in that case are fully supported by cases in other jurisdictions where the subject was in judgment before them.

In the case of Horton v. Monroe, 98 Mich. 195, it was ruled that while the statute, which is similar to the provisions of our statute, did not contemplate a search in the sense that the sheriff must make a tour of the entire county to find the defendant, but it was expressly held in that case that the sheriff should, by his return, show that he had been unable to find the defendant within the life of the writ.

In Glover v. Rawson, 3 Chandler 249, the Supreme Court of Wisconsin expressly ruled that there was no doubt that the sheriff in that case did wrong by returning the writ before the day designated in the writ, and said that he should have retained it until the return day mentioned therein. If he had done so it is more than probable that personal service might have been had upon the defendant. However, in that case it was held under the provisions of the statute of that State that the return, though prematurely made, should not be treated as a nullity; that upon its face

it was sufficient to warrant the court proceeding to judgment.

To the same effect is Millard v. Hayward, 107 Mich. 219. In that case it was ruled that a return was illegal and invalid that was made prior to the return day designated in the writ.

The Supreme Court of Colorado, in Palmer v. Cowdrey, 2 Colo. 1, expressly ruled that it was necessary for the sheriff, in the performance of his duty concerning a writ in his hands, to retain the writ in his hands until the return day.

Further directing our attention to the insistence of counsel for appellant that the return of the sheriff of Gentry county in the tax proceeding now under discussion, together with the judicial determination by the court that the defendant could not be served with summons, furnishes full support to the contention that such order of publication was valid, it is sufficient to say that with the highest respect for the views entertained by learned counsel upon that proposition, in view of the comparatively recent case of Cummings v. Brown, supra, announcing the rule of law applicable to orders of publication of the nature and character of the one in the case at bar, we see no escape from the conclusion that the court had no power to issue the order of publication, and that the publication so made, as well as the subsequent proceedings predicated upon it, were void.

It is earnestly insisted by counsel for appellant that the case of Cummings v. Brown, supra, is distinguishable from the case at bar, and it is contended that that case is no authority whatever upon any point in controversy in this case. Again, we are unable to agree with this contention of the appellant. While it must be conceded in Cummings v. Brown, supra, that there are some features of that case which distinguish it from the case now under consideration, but as to the leading and controlling principles in the Cum-

mings case, which were fully discussed and applied to the disclosures of the record in that case, they are equally applicable to the leading and controlling propositions involved in the case at bar. It was sought in the Cummings case to maintain the legality and validity of the order of publication under the provisions of section 575, upon a return of the sheriff of Greene county similar to the return of the sheriff of Gentry county in the case at bar. This court, speaking through Judge VALLIANT, in discussing the propositions in Cummings v. Brown, thus stated the rule: ''The law requires that a summons be made returnable to the first day of the next term, but if it be served on the defendant within fifteen days of the term, he shall not be required to appear before the next term after the return time. [R. S. 1899, secs. 567, 568.] The officer may execute the writ as soon as it is placed in his hands, but he has no right to return it not executed until the return day. From the time it comes into his hands to the day of the return named in the writ it is his duty to use reasonable diligence to serve it; a return not executed before the return day, is an illegal return. [Dillon v. Rash, 27 Mo. 243; Marks v. Hardy, 86 Mo. 232.]'' In further discussing the proposition confronting the court in that case, it was said: ''We first observe that under section 577, unlike section 575, the order of publication can be made by the court only, it cannot be made by the clerk; second, it can be made by the court only after it has become satisfied that process cannot be served. There is a judicial investigation required and the finding of a fact, which fact is an essential foundation of the order. And preliminary to the judicial investigation there must be a return by the sheriff on the summons that the defendant cannot be found. The court may be satisfied of the fact from the sheriff's return, but is not confined to that. . . . It is claimed, however, to be authorized under section 577. But it cannot be

sustained under that section, because, first, there was no valid return of the summons that the defendant could not be found."

Manifestly the proposition disclosed by the record in the Cummings case, which involved the determination of the force and effect of the sheriff's return and the power and right of the court upon such return to make an order of publication, cannot be distinguished from the proposition disclosed by the record in the case at bar, hence it clearly follows that the treatment of the propositions and the announcement of the rules applicable to them, as heretofore indicated, by the learned judge in the Cummings case, must be treated as direct authority by this court upon the propositions now being discussed. Again, it was sought in the Cummings case to avoid the force and effect of the premature return of the writ of summons by suggesting that the summons not having been indorsed with the date of filing by the clerk, it did not show when it was returned. The same question is presented by learned counsel in the case at bar, and in treating of that proposition in the Cummings case, it was said: "In this instance, the writ was returnable the second Monday in September, 1899, but the sheriff returned it not executed, June 22, 1899. Appellant contends that since there is no memorandum of the clerk showing when it was filed in his office, we ought to presume that the sheriff did his duty and kept it in his possession seeking to execute it until the return day. We do not think the sheriff is entitled to that presumption in the face of his return which indicates that he had done with it all that he intended to do on June 22d. The return was not sufficient to show that the sheriff had done his duty in reference to the writ."

Again, it may be said that the discussion of that proposition clearly furnishes direct authority upon the similar question presented in the case at bar. We

have carefully reviewed and fully considered the case of Cummings v. Brown, and in our opinion the rules of law announced, as applicable to the propositions disclosed by the record in that case, are sound, and we see no reason for departing from the principles announced therein, and we see no valid legal reason why the principles announced in that case, as applicable to orders of publication, should in any way be modified. The conclusions reached in that case are not without support by analogous cases in this State as well as by numerous well-considered cases in other States.

In Millard v. Hayward, supra, the Supreme Court of Michigan, in treating the proposition now under consideration, very clearly stated its conception of the law concerning returns upon writs by officers in whose hands they had been placed. It was there said: "In the present case, the return shows that the property was attached on January 12th, and the certificate that the officer was unable to find the defendant named in the writ is thereafter dated January 15th, three days after the writ was issued, and the property attached, while the return day in the writ is February 5th. No presumption can arise that the sheriff searched for the defendant during the days up to February 5th, and the plain language is that he concluded his inquiry on January 15th, the day he dated his return. This was the view taken by the court below, and we think properly, though the writ was not returned into court until the return day."

In Palmer v. Cowdrey, supra, the Supreme Court of Colorado had in judgment the identical proposition confronting this court in the case at bar. The court in discussing the proposition used this language: "The attempt of defendant in error to obtain service by publication of notice was rightly directed, but he failed to secure full compliance with the statute. . . . The law intends that service of the summons shall be made on the defendant if he can be found within the

jurisdiction during the life of the return. If the defendant is not in the county at the time the summons is placed in the hands of the officer, he may come into the county before the return day, and if notice by publication has been given, it is nevertheless the duty of the officer to serve the summons, if he can find the defendant in his bailiwick. To the performance of this duty it is necessary that the officer should retain the summons in his hands until the return day; for after return of *non inventus,* of course the officer cannot obey the command of the writ. In the present case, the sheriff returned the summons more than a month before the return day, and thereafter he could not comply with the statute by making the usual exertion to serve it. Whether the defendant came into the county after the return and during the life of the writ, we do not know, nor can we be informed except by the return of the proper officer. By the return, as it stands in the record, it does not appear that the service could not have been made during the life of the writ, and the court has no authority to proceed upon notice by publication without such evidence. For this cause the decree must be reversed, with costs, and the cause remanded for further proceedings.''

The rule as announced in the Michigan and Colorado cases, from which we have quoted, is fully supported by numerous other cases in this State. Again, it may be noted that there are numerous cases in this State as applicable to the return of writs of execution before the date designated in the return, which upon reason and principle support the conclusions reached in the case of Cummings v. Brown. It has been uniformly held in a long and unbroken line of decisions in this State, as applicable to writs of execution, that a return made upon such writs prematurely before the return day as designated in the writ, is illegal and invalid, and upon which no subsequent proceeding can be predicated.

We take it that the provisions of section 577 mean what the provisions of such section indicate, and clearly when it is sought to obtain an order of publication under the provisions of that section it is essential, first, that summons shall be issued against the defendant or defendants, and the sheriff to whom it is directed must make return that the defendant or defendants cannot be found.   Until these essential requisites are fully complied with the court is absolutely powerless to make an order of publication under the provisions of that section.   The summons contemplated by the provisions of that section is the ordinary summons issued against a defendant, and the sheriff to whom it is directed must, in good faith, retain the writ in his hands during its life, and make a reasonable effort during that time to serve the process, but if unable to serve it during the life of the writ he shall then, as designated in the writ, make return of it upon the return day, certifying that the defendant or defendants cannot be found.   With a strict compliance with the provisions of that section as to the issuance of the summons and the return of the sheriff, the court then upon this basis proceeds to determine to its own satisfaction that process cannot be served.   As was said in State ex rel. Kearney v. Finn, 87 Mo. l. c. 315, "no method of thus satisfying the court is pointed out.   It cannot be contended that the law means that witnesses shall be subpoenaed and heard.   The court may, and in many cases ought to, make inquiry aside from the return.   But it may also, and rightfully too, be satisfied from the return itself."   The final conclusion in discussing the proposition in that case was then announced, that is, "It is the *non est* return which constitutes the basis upon which this class of publications are made.   It supplies the place of an affidavit of non-residence.   Every officer knows, and must know, that a publication is the natural and orderly result of such a return.   It cannot be said

that the court acts independently of the return; it rather acts in conjunction with the return, without which it could not make this class of publication."

We have thus pointed out the essential requirements of the statute in order to obtain a legal and valid publication to a defendant, and in the interpretation of the law applicable to the statutes concerning constructive notice to defendants, we must not be unmindful of the uniform expressions by this court that where a plaintiff seeks to confer upon the court jurisdiction of the person of the defendant by constructive service, there must be a strict compliance with the terms of the statute under which the order of publication purports to have been issued.

In Land & Mining Co. v. Land & Cattle Co., 187 Mo. l. c. 435, it was appropriately said, concerning orders of publication, that "the order of publication serves, as far as it can, the office of the summons; but though a summons be altogether correct in form, it does not avail to bring the defendant into court unless it is served on him according to law. When the law is driven, from the necessity of the case, to authorize a judgment that will affect the property rights of an absent or unknown defendant, on a notice by mere publication in a newspaper, it demands of the plaintiff a strict compliance with the terms of the statute under which the publication purports to have been made. [Tooker v. Leake, 146 Mo. 419; Harness v. Cravens, 126 Mo. 233.]"

To the same effect is Evarts v. Lumber & Mining Co., 193 Mo. l. c. 449. It was there said: "All through the cases, especially tax cases, runs the thread that a strict compliance with the statute is demanded, and that the court will critically examine every step and feature of the proceeding in order to determine whether the owner of the property has lost his right

thereto, and the purchaser at the tax sale has acquired it.''

We see no necessity for pursuing this subject further. The case of Cummings v. Brown, supra, is a direct adjudication upon every question applicable to the propositions disclosed by the record in the case at bar. If that case is to be longer followed we see no escape from the conclusion that the order of publication in the tax proceeding involved in this controversy was invalid, and did not confer jurisdiction upon the court over the person of the defendant in the tax suit, as heretofore indicated. We see no reason for departing from the conclusions reached in the Cummings case, and it must be held decisive of the first proposition in the case at bar.

## II.

This brings us to the consideration of the final contention of appellant, that is, that the facts as developed upon the trial of this case clearly support the contention of appellant concerning the allegations of *laches* on the part of the defendants and adverse possession by the plaintiff and its grantors for more than ten years. It is sufficient to say upon these propositions that we have carefully read in detail all of the testimony introduced applicable to the question of *laches* on the part of the defendants and adverse possession of the premises by the plaintiff for the statutory period of ten years. In our opinion, the facts as shown upon the trial of this cause are insufficient to defeat the paper title of the defendants by reason of any negligence or *laches* on their part, and are also insufficient to establish that open, notorious and hostile adverse possession by the plaintiff and its grantors for such period as would defeat the defendant's title.

It is conceded by the appellant that the land in controversy was unfit for cultivation or agricultural

purposes, and that the acts upon which are predicated the claim of adverse possession were that the grantors paid all the taxes assessed against said land, and that the plaintiff and its grantors annually visited said land and cut from it such timber as it was profitable to remove, and protected the remaining timber by prosecuting trespassers in the courts of the State, and looking after the land and the making of log roads in procuring timber from the land.

The tax deed, as we have heretofore indicated in this opinion, upon which the plaintiff predicates its claim to this land, was void, and it was expressly ruled by this court in Nye v. Alfter, 127 Mo. 529, that the payment of taxes, cutting timber and permitting one's cattle to graze upon outlying unfenced lands do not constitute that open, notorious, visible possession of land which will deprive the true owner of his title.

In Pharis v. Jones, 122 Mo. 125, this court, speaking through Judge BURGESS, again announced the rule that "the payment of taxes on the land by plaintiff, cutting timber thereon, and keeping off trespassers, did not constitute possession, but were merely acts of ownership, tending to show that he claimed to own it."

In Carter v. Hornback, 139 Mo. 238, there was an instruction in behalf of the defendant upon the question of adverse possession, and this court in discussing this instruction, said: "The vice of this instruction is in telling the jury that the use of the land in question by cutting and hauling firewood, saw timber, making and hauling fence rails from the land and clearing up same, constituted actual possession. Such acts do not constitute possession but merely tend to show claim of ownership."

In Morgan v. Pott, 124 Mo. App. 371, the question of what would constitute adverse possession was directly in judgment. The use of the land in dispute

in that case, as recited by the court in its opinion, was as in the case at bar. It consisted principally of cutting and removing timber from the land, and the case of Carter v. Hornback, Pharis v. Jones, and Nye v. Alfter, supra, were unqualifiedly approved, and the final conclusion was announced that such acts do not constitute such possession as would defeat the title of the plaintiff in that case.

In Crain v. Peterman, 200 Mo. 295, there was evidence for the defendant tending to show that immediately after the receipt of the first sheriff's deed in 1879 by a man by the name of Love, such deed was placed on record and Mr. Love exercised acts of ownership over the land, herding cattle, cutting timber, etc. It was further shown that Love or his assignee paid the taxes every year upon the land in controversy from 1879 up to the date of the trial, except for the year 1896. It further appeared from the evidence introduced by the defendant that neither the plaintiff nor any one claiming under him had been in possession of the land or paid any taxes thereon for more than thirty consecutive years. After this showing was made by the defendant the plaintiff, in rebuttal, undertook to show such a possession as would defeat defendant's right of recovery, and upon that subject introduced evidence as to the cutting of grass by a man named Shuck, and other evidence that Mr. Shuck, in justification of his act of cutting grass, had been heard twenty-five or thirty years before to say that he had a lease from Crain which gave him such authority to cut the grass. This court, in discussing the evidence as introduced by both defendant and the plaintiff, held that neither the acts of the plaintiff nor of defendant respecting the possession of the land amounted to actual possession, and in disposing of the question the court used this language: "The acts of Love, after he recorded his sheriff's deed, in herding cattle, cutting timber and selling to others the

right to do so, were more ostensible acts of ownership than the cutting of grass by Shuck, yet those acts did not amount to actual possession, though done under color and actual claim of title. [Nye v. Alfter, 127 Mo. 529.]''

In Herbst v. Merrifield, 133 Mo. 267, the court was confronted directly with the question as to what was necessary to be done by a party claiming possession of premises in order to constitute such possession adverse to the true owner of the land. The court, in reciting the facts in that case and in applying the rules of law to the facts as recited, very clearly and forcibly announced the correct rule applicable to the question of adverse possession. It was there said:

''Here the land was unfenced. No monuments were placed about it to indicate the boundaries of defendant's claim, and no acts, other than such as the non-claiming trespasser too frequently asserts to lands that are left uninclosed in this country, were done to show defendant's adverse assertion of claim to the land.

''The mere assertion of ownership by the acts above indicated would not be sufficient to invest title in defendant under the claims of adverse possession unless such acts and claims of ownership were known to the parties holding the legal title, and known to have been done under a claim of title adverse to his rights. The occasional cutting of firewood or the taking of rock from this land by defendant Merrifield and others by his permission, after the manner indicated by the testimony in the case, could not have been considered other than as a temporary trespass, in the absence of an express showing to the contrary, even if it were conceded, or had proof been made, that plaintiff's grantors knew of the acts and made no complaint. . . .

''Possession to constitute a disseizin against the owner of the legal title, when not actual, must generally be so notorious by acts of assertion, that it may be

presumed to have been known to the rightful owner. It should be so open and notorious that in passing by or over his lands the owner could not reasonably be deceived. Acts of ownership by others than the holder of the legal title should not be held sufficient to constitute adverse possession unless they were of such ·frequency and of such a character as would at all times apprise the real owner that his seizin was interrupted and that his title was endangered. Most dangerous results would flow from the permission by courts of titles by limitation to ripen, in favor of those holding mere color of title, without actual occupancy, by acts of ownership so slight in and of themselves as not calculated to attract the attention of the real owner, or to indicate that his seizin (that follows his legal title) was interrupted. An occasional trespass by way of cutting timbers or digging a few loads of rock, is not sufficient to amount to an adverse assertion of title against the true owner, in the absence of express notice to the owner of such assertion of ownership by the trespasser.''

Clearly, if the rules of law as announced in the cases as heretofore indicated, and from which we have quoted, are sound, then there can be but one conclusion upon the question of adverse possession, as applicable to the facts developed upon the trial in the case at bar, and that is that such facts were insufficient to warrant the court in finding that the possession by the plaintiff and its grantors was so open, notorious and hostile as to defeat the title of the true owner of such property.

Upon the question of *laches* upon the part of the defendants, it is only necessary to say, as was said in Haarstick v. Gabriel, 200 Mo. l. c. 243, 'we do not think the circumstances of this case demand the application of that doctrine. In that case it will be observed that there were two tax suits, followed by judgments in

both cases. Defendants were the purchasers under both judgments at the tax sales and received tax deeds by the sheriff, which were duly recorded. There was other testimony that the defendants had paid all the taxes on the land from 1870 up to the date of the trial, including the taxes and penalties covered by those two judgments and sheriff's sales, which aggregated about $500, and this court held, as we have heretofore indicated, that under the facts in that case the doctrine of *laches* could not be applied. See also Manwaring v. Missouri Lumber & Mining Co., 200 Mo. 718; Weir v. Lumber Co., 186 Mo. 388.

In this case, as we have heretofore held, the tax deed upon which plaintiff relies, was void. There was no actual possession taken of the land in controversy, at least no such open, notorious possession as would authorize the presumption of notice to the true owner that his possession was interrupted, and that his title was endangered. There were no substantial improvements made upon the land, and the plaintiff and its grantors simply paid the taxes, and at various times, as the supply of their mills needed it, removed timber from this land in controversy, which, it is asserted by the plaintiff, constitutes the chief value of the land. The disclosures of the record in this case, in our opinion, fall far short of showing a state of facts which would warrant the court in applying the doctrine of *laches,* thereby defeating the title of the true owner.

We deem it unnecessary to pursue further the discussion of the propositions involved in this legal controversy. We have indicated the authorities which, in our opinion, are decisive of all the questions presented by this record, and we are unwilling to unsettle the rules announced in the authorities cited. To do so, in our judgment, would serve no useful purpose either to the property-owners or to the profession.

We have given expression to our views of the legal propositions disclosed by this record, which results in the conclusion that the judgment of the trial court should be affirmed, and it is so ordered. All concur.